1. A distinct collateral oral agreement, not inconsistent with a written contract, is not necessarily merged therein, and one contract may be the consideration of another, the inducement to its execution, and an independent oral agreement which has been so induced may be proved and enforced though not referred to in the written contract.
2. Where as an inducement and consideration for the execution of a written contract for the sale of land, together with certain tourist cabins thereon, the sellers orally agreed with the buyers that they would not thereafter compete with them in renting tourist cabins in the area as described in the petition here, such oral agreement was separate and distinct from and not inconsistent with the written contract, and was enforceable in equity. The present petition as amended, setting forth such facts, a breach of the oral agreement, and alleging damages, stated a cause of action for injunction and the recovery of damages, and the court erred in sustaining the general demurrer.
3. The statute of frauds is not applicable to the oral agreement relied on, for the assigned reason that it was not alleged that it was to be performed within the space of one year, since it was shown that it was promptly and fully performed by the petitioners and accepted by the defendants, thus meeting the requirements of the Code, § 20-402 (2).
4. Where it was alleged that the defendants began in January, 1948, to violate their agreement not to compete in the renting of tourist cabins, and the present action was filed in August, 1948, it could not be said as a matter of law that the plaintiffs in error were guilty of laches in not instituting the present action sooner.
5. The alleged oral contract was not subject to the objection that it was to vague and indefinite to be enforceable, in that, as contended, it did not set out definitely the portion of the defendants' property in which it was agreed by them not to compete with the petitioners in renting tourist cabins.
 Nos. 16695, 16714. JULY 14, 1949. REHEARING DENIED JULY 27, 1949.
Charles Langenback and Mrs. Charles Langenback filed in the Superior Court of Jefferson County, Georgia, a petition against J. T. Mays and Mrs. J. T. Mays, which as amended alleged the following: On November 4, 1946, the petitioners bought from the defendants improved real estate described as being "a tract of land in the 77th D. G. M. of Jefferson County, Georgia, containing approximately three acres, more or less, facing along U.S. Highway No. 1 for a distance of 510 feet, and the northern point on said highway to being at a stake set 144 feet from the center of the road to Matthews, Georgia, and to extend 510 feet along said highway to a stake. From such beginning point just named, the line runs in a southeasterly direction for a distance of 115 feet to the right of way of the road to Matthews, Georgia; thence along the right of way of said road for a distance of 525 feet to a stake; thence in a westerly direction to a stake already described on Highway No. 1." The writings evidencing such sale are attached to the petition as Exhibits "A" and "B". Exhibit "A" is a copy of a contract, dated October 16, 1946, whereby J. T. Mays agreed to sell to Charles Langenback described real estate in the 81st D. G. M. of Jefferson County, Georgia, containing three acres, more or less, together with certain cabins thereon, for a consideration of $7500, of which $400 had been paid in cash, the purchaser to take over the property as of October 14, 1946. Exhibit "B" purported to be a copy of a warranty deed in the usual form, dated November 4, 1946, whereby Mr. and Mrs. J. T. Mays conveyed to Mr. and Mrs. Charles Langenback the property described in the outset of this statement of facts as being in the 77th D. G. M. of Jefferson County, Georgia, but containing the following additional description: "Included in this purchase in a small cabin standing just across the Matthews Highway on the property of the first part, but which is to be moved on the above property. It includes also the furnishings and equipment now in a said cabins on the property." It was alleged that, while the deed shown by Exhibit "B" differs as to the parties named in each, they both relate to the same property, and that the first writing, Exhibit "A", appears only in the names of the parties actually negotiating and handling the sale for all the parties involved. The property at the time was being operated with seven modern tourist cabins, built for the *Page 708 
purpose of accommodating guests traveling along U.S. Highway No. 1. The property sold to the petitioners was cut out of a larger tract of land owned and occupied by the defendants. Adjacent to this property is a store, filling station, and cafe operated then and now by the defendants. These tourist cabins are strategically located near the intersection of three highways, and about equidistant from two other tourist comps on U.S. Highway No. 1. When the petitioners and the defendants were negotiating about the sale of the land and the tourist cabins located thereon, they recognized that the real estate sold, outside of the use of the same in the operation tourist cabins for travellers passing along an important U.S. highway, would not be worth the amount paid for the same, that is, $7500. Without such operation or business the property would not be worth one-third of the amount. The additional value is made up by the facts alleged in the immediately following allegations. Without the good will of the business and the lack of competition in the territory immediately adjacent to this property and upon the remaining land occupied by the defendants, the petitioners would not have purchased the property at any price, and the sellers were so informed. As an inducement to get the petitioners to buy the property and business for the monetary consideration named, the defendants orally agreed that they would not again carry on the business of renting tourist cabins in the area named in competition with the petitioners, so that the only tourist-camp business in the immediate vicinity would be that purchased by the petitioners. During the year 1947 the defendants built a brick building, ostensibly for a residence for a members of the family, adjacent to the property sold to the petitioners and within the area involved in the foregoing allegations. Since that time two more brick buildings suitable for tourists or the tourist-cabin business have been erected in the same area immediately adjacent to the petitioners' property. During the spring of 1948 the defendants announced their intention to operate a tourist-cabin business in competition with the petitioners. The defendants began renting these units to tourists on January 30, 1948. In addition, they have begun erecting signs on each side of the petitioners' property on each side of the highway, calling attention to their cabins as "Sunny Dale All *Page 709 
Brick Cabins." The sign near the petitioners' property points to an office near the gas station marked "Sunny Dale Brick Cabin Office." Tourists travelling along the highway and seeing the filling station, brick store, and main office of the brick cabins are attracted to the defendants' office where they are turned away from the petitioners' cabins, resulting in a continuous loss of income to the petitioners. The defendants, J. T. Mays, stays in his office with his light on at night until he has filled the defendants' cabins, at which time he switches off his office light and switches on a light with a "no vacancy" sign near the entrance to the petitioners' driveway. The office and signs placed by the defendants have been placed so as to obstruct a view from a tourist travelling south on Federal Highway No. 1. When the "no vacancy" sign is switched on near the entrance to the petitioners' driveway, the effect is to cause prospective customers to believe that the cabins of the petitioners are filled, and thus business is driven away from the cabins. The illegal competition by the defendants, in violation of their agreement, has already caused the petitioners to lose the sum of $2500. If the defendants are allowed to continue to violate the inducement and contract made to the petitioners not to compete with them in the operation of or entertaining guests in what is known as the tourist-cabin business, it will destroy the business of the petitioners and the value of the property purchased by them, and the same occurring daily as threatened will cause irreparable loss to the petitioners. It is proper for a court of equity to take jurisdiction of this matter to restrain repeated breaches of the contract between the parties and to award the petitioners damages already occurring by reason of the past breach of the contract.
The prayers were: (1) that the defendants be enjoined from carrying on a tourist-cabin business where tourists and others are entertained as transients within the area named in the petition; (2) that they be enjoined from maintaining offices and advertising signs for the purpose of detracting from the petitioners' business within the same area; and (3) that the petitioners recover damages, nominal and actual, caused by the breach set out in the petition.
The defendants filed general and special demurrers to the *Page 710 
original petition, and after amendment the demurrers were renewed and other grounds were added. The grounds of general demurrer were as follows: 1. No cause of action is set out against the defendants, and no grounds for equitable relief are shown. 2. The alleged agreement in parol by the defendants that, if the petitioners would buy the property and business of the defendants for the consideration of $7500, they would not carry on the business of renting tourist cabins in the area named was violative of the statute of frauds and void because not in writing. 3. The contract relied upon is too vague and indefinite to be capable of enforcement, in that it fails to set out definitely the portion of the defendants' adjoining property agreed not to be used "for a tourist camp cabin." 4. The petition as amended shows that the petitioners were guilty of laches, in that they sat by and permitted the defendants to construct two tourist cabins and to actually operate the same on January 30, 1948. 5. The petition as amended undertakes to set up a parol contract on the part of the defendants not to build and operate cabins on their property, thus seeking to engraft by parol additional terms upon a written contract without first seeking to reform the same. 6. The petition as amended shows that the petitioners have an adequate remedy at law.
The court, without ruling on the special demurrers, sustained the general demurrer and dismissed the petition, and the exception here is to that judgment.
The defendants filed what they termed a "cross-bill of exceptions," but in which they do not affirmatively except to the judgment of the court, but say that, "In the event that the said order is to be interpreted as overruling the defendants' special demurrers, the defendants then and there except and now except and say that the judgment of the court overruling the defendants' special demurrers is error, as being contrary to law, and the defendants say that the court should have sustained all of the defendants' special demurrers." In the brief of the defendants in error, it is said that, "If counsel for plaintiffs is correct, as we believe he is, that such is not the case [that the court passed on and overruled the special demurrers], the cross-bill will, of course, be disregarded by the court."
1, 2. Parol evidence is inadmissible to add to, take from, or vary a written contract. The attendant circumstances surrounding its execution, ambiguities, and the verbal portion of a contract which is in writing only in part may be shown by parol. Code, § 20-704 (1). The facts here alleged do not come within the operation of this rule, in that the verbal agreement alleged is an independent and complete contract within itself and forms no part of the written contract. Neither does it alter in any respect the writing. It is collateral to, independent of, and distinct from the written contract. Though it be designated as a collateral contemporaneous agreement between the parties, its independence and its lack of inconsistency with the written contract cause it not to become merged with the written contract.Forsyth Mfg. Co. v. Castlen, 112 Ga. 199, 211
(37 S.E. 485); Brinson v. Franklin, 177 Ga. 727 (1) (171 S.E. 287);Indiana Truck Corp. v. Glock, 46 Ga. App. 519 (1) (168 S.E. 124); Neuhoff v. Swift Co., 192 Ga. App. 651 (2-a, b) (188 S.E. 831). See also Cottle v. Tomlinson, 192 Ga. 704,712 (16 S.E.2d 555); 20 Am. Jur. 992, § 1140; 32 C. J. S. 970, § 997. This rule was recognized in Stonecypher v. GeorgiaPower Co., 183 Ga. 498 (189 S.E. 13), although holding that the oral agreement there fell under the Code, § 20-704 (1). The written contract in the present case was sufficient consideration to support the verbal agreement. Spier v. Lambdin, 45 Ga. 320. It follows that the oral agreement is a valid contract as against the attack upon the ground that it seeks to add to, take from, or vary the terms of the written contract, and that it is without consideration.
3. The statute of frauds is not, as contended in one ground of general demurrer, applicable here for the assigned reason that it was not alleged that it was to be performed within the space of one year. It is shown by the petition as amended that the agreement to enter into the written contract was promptly and fully performed by the petitioners and such performance accepted by the defendants, thus meeting the requirements of the Code, § 20-402 (2).
4. Where it is alleged that the defendants began in January, 1948, to violate their agreement not to compete in the renting of tourist cabins, and the present petition was filed in August, *Page 712 
1948, it could not be said as a matter of law that the petitioners were guilty of laches in not instituting the present action sooner, as contended in one ground of general demurrer.
5. In one ground of general demurrer it is urged that the oral agreement relied upon is too vaguer and indefinite to be enforceable, in that it fails to set out definitely the portion of the defendants' adjoining property embraced in such agreement. The petition as amended alleged that the property purchased was cut from a tract of land owned and occupied by the defendants, and that, adjacent to the property so purchased, the defendants operate a store, filling station, and cafe. It then alleges that, "Without the good will of the business and the lack of competition in the territory immediately adjacent to this property and upon the remaining land occupied by the defendants, the plaintiffs would not have purchased the property at any price, and the sellers were so informed. As an inducement to get the plaintiffs to buy this property and business for the monetary consideration named, the defendants orally agreed that they would not again carry on the business of renting tourist cabins in the area named in competition with the plaintiffs so that the only tourist-camp business in the immediate vicinity would be that purchased by the plaintiffs." The words, "in the area named," obviously refer to the preceding words, "territory immediately adjacent to this property and upon the remaining land occupied by the defendants," and sufficiently identified the area in which the defendants were not to compete in renting tourist cabins.
The defendants in error concede that, if, as determined by this court, the trial judge did not pass upon the special demurrers their cross-bill of exceptions should not be considered, and, accordingly, it is dismissed.
Judgment reversed on the main bill of exceptions. Cross-billof exceptions dismissed. All the Justices concur, except Wyatt,J., who dissents from the judgment on the main bill. *Page 713