A08A1299. TRIPLE NET PROPERTIES, LLC v. BURRUSS DEVELOPMENT & CONSTRUCTION, INC. et al.
(667 SE2d 127)

MILLER, Judge.

Triple Net Properties, LLC ("Triple Net") sued Burruss Development & Construction, Inc., Donald H. Burruss, Full House Investments, LLC, John Doe I, and John Doe II (collectively, the "defendants"), asserting claims for breach of contract, fraud, punitive damages, attorney fees, and declaratory judgment. Triple Net also filed a notice of lis pendens with respect to the real property alleged to be the subject of the litigation. The defendants moved for summary judgment on all of Triple Net's claims. Burruss Development also moved to cancel the notice of lis pendens. Following a hearing, the trial court granted both motions. Triple Net appeals, claiming that the trial court erred in (i) denying its motion for continuance to allow more time for discovery, (ii) granting the defendants' motion for summary judgment, and (iii) granting Burruss Development's motion to cancel the notice of lis pendens. For the reasons set forth below, we disagree and affirm.

We review a trial court's grant of summary judgment de novo. *Supchak v. Pruitt*, 232 Ga. App. 680, 682 (1) (503 SE2d 581) (1998). To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law. OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). A defendant need not produce any evidence to obtain summary judgment, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim. Id.

So viewed, the evidence shows that Terrill Turner, the manager of Triple Net, Burruss, the president and CEO of Burruss Development, and Walter S. Burdette, the manager of Creig Investments, LLC, agreed to enter into a business relationship regarding the purchase and development of a four-parcel tract of property in Cherokee County (the "Property"). On November 30, 2005, Triple Net, Burruss Development, and Creig Investments executed an agreement (the "11/30/05 Agreement") pursuant to which Burruss Development agreed to purchase the Property and within ten days thereafter form a new limited liability company, referred to as "Newco." The 11/30/05 Agreement provided that Newco "shall include [Triple Net and Creig Investments] as a 20% owner each entitling [them] 20% each of the profits in Newco as they are distributed." Turner averred that the parties agreed that each would have an interest in the assets of Newco, and these assets would include the Property and the profits derived from the Property. The 11/30/05 Agreement, however, did not expressly provide for the transfer of the Property to Newco.

Two days before the 11/30/05 Agreement was signed, Emory E. Stewart and Atlanta Commercial Brokers, Inc. ("Stewart") agreed to assign its rights to purchase a portion of the Property to Burruss Development in exchange for, among other things, 20% of Newco (the "Stewart Contract").[1] According to Turner, who prepared the Stewart Contract, Burruss Development agreed to buy the Property and then transfer ownership to Newco. Thus, by operation of the 11/30/05 Agreement and the Stewart Agreement, Newco would own the Property, Burruss Development would own a 40% interest in Newco, and Triple Net, Stewart, and Creig Investments would each hold a 20% interest in Newco.

The closing on the purchase of the Property did not occur on its originally scheduled date of December 15, 2005. Throughout 2006, Burruss Development and Stewart became embroiled in disputes which caused repeated delays in Burruss Development's ability to obtain a loan to buy the Property. During this period, Stewart and other parties filed various liens against the Property, and the Property was subject to foreclosure actions, fines imposed by the Georgia Department of Natural Resources, and other legal actions. A portion of the loan to Burruss Development for the purchase of the Property was ultimately used to buy out Stewart's interest in Newco.

The closing was eventually scheduled for April 13, 2007. On April 12, 2007, Burruss, Turner, and Burdette attended a meeting

---

[1] Only a partially executed Stewart Contract is in the record, but the parties do not dispute that it exists.

during which Turner, on behalf of Triple Net, presented a Memorandum Agreement which Burruss and Burdette signed. Triple Net was not a party to the Memorandum Agreement. According to Turner, he did not include himself or Triple Net in the Memorandum Agreement because Burruss refused to deal with him in any manner whatsoever.

The Memorandum Agreement recites that it is made in light of the delay in obtaining financing and to take into consideration the buyout of Stewart. Upon obtaining "permanent financing," Burruss Development agreed to transfer ownership of the Property to a yet-to-be-formed limited liability company named Nelson Station Rail Park, LLC, to be owned 55% by Burruss Development and 45% by Creig Investments. At the closing on the Property the following day, Creig Investments agreed to divide equally with Triple Net any sums paid to Creig Investments as a 45% owner of the Nelson Station LLC.

Burruss Development successfully acquired the Property on April 13, 2007. United Commercial Bank (the "Bank") loaned Burruss Development $5,000,000 to fund the purchase, and the loan was secured by a security deed on the Property. According to the Bank's attorney, the closing involved multiple parties and claims that had been made or threatened to be made against the Property and was further complicated by contentious relationships among some of the parties. Thus, to remove any claim, action, or encumbrance that might affect the Bank's interests under its security deed, the attorney prepared affidavits and quitclaim deeds to be signed by the interested parties. Turner, as manager of Triple Net, averred that he was not aware of any pending or threatened actions by Triple Net that could in any manner threaten title to the Property or constitute a lien thereon. Triple Net and Turner, individually, also executed a quitclaim deed conveying any interest in the Property to Burruss Development.

Also at the closing was a principal of Bonnie Blue Investments, Inc., which held a security deed against a portion of the Property. Before it would release its interest under the security deed, Bonnie Blue required that all interested parties execute a mutual release agreement. Creig Investments, Full House, Burdette, Turner, Burruss, Burruss Development, and Stewart, among others, signed the release. On May 11, 2007, Burruss Development executed a note to Burruss, personally, in the amount of $5,000,000 and granted a deed to secure debt on the Property to Burruss.

According to Turner, Burruss Development refused to allow for

the formation or operation of Newco in accordance with the Agreement.[2] This lawsuit followed.

1. In its response to defendants' motion for summary judgment and during the motion hearing, Triple Net asked that the trial court refrain from ruling on the motion until the completion of its discovery, including the depositions of Stewart, Burdette, Jim Call, Burruss's bookkeeper, and Mike Edwards, a loan officer for the Bank. The trial court refused to allow further evidence to be submitted following the hearing date. See OCGA § 9-11-56 (c). Triple Net contends that this ruling was an abuse of discretion. We disagree.

"[T]he grant or denial of a continuance is a matter within the discretion of the trial judge and unless clearly abused will not be interfered with. This applies in summary judgment proceedings." (Citation and punctuation omitted.) *Patterson v. Lanham*, 182 Ga. App. 343, 344 (1) (355 SE2d 738) (1987). See OCGA § 9-11-56 (f). The record shows that after answering the complaint on July 25, 2007, the defendants moved for summary judgment on September 10, 2007. Triple Net, however, waited until only two days before the motion hearing on November 1, 2007, before asking for additional time. Triple Net does not show that during the period between the filing of the motion for summary judgment and the hearing date it attempted to depose those additional persons who it contended to be necessary to complete its discovery. Given the apparent lack of diligence on Triple Net's part, we cannot find that the trial court clearly abused its discretion in failing to allow more time for discovery. See *Patterson*, supra, 182 Ga. App. at 344 (1); *Cole v. Jordan*, 158 Ga. App. 200, 201 (2) (279 SE2d 497) (1981) (party's lack of diligence in pursuing discovery authorized the denial of its motion for continuance).

Triple Net argues that the trial court erred by refusing to exercise its discretion, pointing to the trial court's ruling from the bench that the "Uniform Rules clearly state that once a summary judgment hearing is set . . . you've got to get everything in." However, Triple Net had consistently argued that it was entitled by the Uniform Superior Court Rules to have additional time to conduct discovery, and the trial court appears to be responding to this argument. We find no error.

2. Triple Net also contends that the trial court erred in granting defendants' motion for summary judgment. We disagree.

---

[2] Triple Net suggests in its appellate brief that the trial court improperly struck Turner's affidavit. The trial court did not expressly strike Turner's affidavit, and we have considered the affidavit for purposes of our de novo review of the record.

(a) Triple Net claims that Burruss Development breached the 11/30/05 Agreement by (i) refusing to enter into and form Newco with Triple Net and Creig Investments, (ii) executing a promissory note and granting a deed to secure debt in favor of Burruss, and (iii) entering into the Memorandum Agreement on April 12, 2007. The trial court concluded that Triple Net could not recover on its claims as a matter of law for two reasons. First, Triple Net had agreed to relieve Burruss Development and the other defendants of any liability under the 11/30/05 Agreement when at the April 13, 2007, closing, it signed the mutual release. Second, Triple Net released any interest in the Property when it executed the quitclaim deed.

Triple Net challenges the trial court's characterization of the mutual release and the quitclaim deed as unambiguous, contending that the trial court should have considered Turner's affidavit, the closing attorney's deposition, and other evidence of record which demonstrates that the parties did not intend to release the claims or convey the interests arising under the 11/30/05 Agreement. However, we need not address these arguments because we conclude that Triple Net abandoned the 11/30/05 Agreement, and so the effect of the mutual release and quitclaim thereon is moot.

"An existing contract is superseded and discharged whenever the parties subsequently enter upon a valid and inconsistent agreement completely covering the subject-matter embraced by the original contract. [Cit.]" *Hennessy v. Woodruff*, 210 Ga. 742, 744 (1) (82 SE2d 859) (1954). Further, "[a] contract may be rescinded by agreement, although the evidence thereof may be by conduct and not by words. [Cit.]" Id. at 744 (2). Accord *WorksiteRx, LLC v. DrTango, Inc.*, 286 Ga. App. 284, 285 (648 SE2d 775) (2007).

Although Triple Net points to Burruss Development's execution of the Memorandum Agreement as a breach of the 11/30/05 Agreement, the evidence is uncontroverted that Turner, Triple Net's principal, asked Burruss and Burdette to sign the Memorandum Agreement on behalf of Burruss Development and Creig Investments. Given that the Memorandum Agreement contemplates that Burruss Development would buy the Property and then transfer it to a limited liability company to be owned 55% by Burruss Development and 45% by Creig Investments, the Memorandum Agreement and the 11/30/05 Agreement cover the same subject matter and cannot both be performed. Further, the evidence shows that Burdette then agreed to split the proceeds of Creig Investments' 45% interest with Triple Net. This series of transactions, involving all the parties to the 11/30/05 Agreement and occurring with Turner's knowledge and consent, supercedes, discharges, and abandons the 11/30/05 Agreement. Accordingly, Triple Net cannot establish a breach thereof. See *Brooks v. Boykin*, 194 Ga. App. 854, 855-856 (3)

(392 SE2d 46) (1990) (summary judgment on plaintiff's breach of contract claim affirmed because plaintiff abandoned the contract).

In light of the foregoing, the trial court correctly granted summary judgment to the defendants on Triple Net's breach of contract claim. Although not the stated basis for the trial court's ruling, the defendants argued below that the 11/30/05 Agreement had been abandoned, and Triple Net was afforded the opportunity to respond to this argument. Further, "[a] grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed." (Citations omitted.) *Albany Oil Mill v. Sumter Elec. Membership Corp.*, 212 Ga. App. 242, 243 (3) (441 SE2d 524) (1994).

(b) Triple Net also contends that the trial court erred in granting summary judgment to the defendants on its fraud and declaratory judgment claims. We disagree.

Triple Net claims that it was defrauded (i) by defendants' failure to establish Newco, and (ii) by defendants misleading the Bank's attorney by identifying defendant Full House Investments, LLC, as Newco. The fraud claims involve the formation of Newco, and Triple Net has abandoned the Agreement under which Newco was to be formed. Accordingly, Triple Net cannot show it was damaged and therefore cannot sustain a claim for fraud. See, e.g., *Pyle v. City of Cedartown*, 240 Ga. App. 445, 447 (1) (524 SE2d 7) (1999) (elements of fraud include damage to the plaintiff, and "[f]or an action for fraud to survive a motion for summary judgment, there must be some evidence from which a jury could find each element of the tort") (citation omitted).

Triple Net also petitioned for a declaratory judgment (i) that it had a 25% undivided interest in the Property, (ii) that the note and security deed from Burruss Development to Burruss breached the 11/30/05 Agreement, (iii) that such note and security deed be canceled, (iv) that the quitclaim did not convey Triple Net's interest in the Property to Burruss Development, and (v) that the mutual release did not convey Triple Net's interest in the Property. Pretermitting whether declaratory judgment was otherwise appropriate or available, Triple Net relies on the 11/30/05 Agreement to establish these claims, and they are therefore without merit.

In view of the foregoing, the trial court properly granted summary judgment to the defendants on Triple Net's fraud and declaratory relief claims.

3. Triple Net further contends that the trial court erred in granting Burruss Development's motion to cancel the notice of lis pendens that Triple Net had placed on the Property. Notice of lis pendens may be recorded as to suits involving real property "actually

and directly brought into litigation by the pleadings in a pending suit and as to which some relief is sought respecting that particular property." *Quill v. Newberry*, 238 Ga. App. 184, 190 (2) (a) (518 SE2d 189) (1999). See OCGA § 44-14-610; *Hill v. L/A Mgmt. Corp.*, 234 Ga. 341, 342 (216 SE2d 97) (1975). Pretermitting whether this action involves real property such that the recording of a notice of lis pendens was initially proper, the trial court was authorized to order that the notice of lis pendens be cancelled in light of its grant of summary judgment to the defendants on the underlying claims. See *Johnson v. Lipton*, 254 Ga. 326, 328 (2) (328 SE2d 533) (1985); *Brooks v. Hicks*, 231 Ga. 658, 659 (203 SE2d 492) (1974).

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED AUGUST 15, 2008 — 

*William L. Colvin*, for appellant.
*Neville & Cunat, John R. Neville*, for appellees.