A09A0266. RUSHIN et al. v. USSERY.
(681 SE2d 263)

BERNES, Judge.

This case arises from an alleged oral contract to make a will. Prior to her death, Leila Rushin filed an action against two of her stepchildren to recover allegedly misappropriated funds. The defendants asserted numerous counterclaims, several of which were based upon an alleged oral contract with Leila to make a will. Leila died before the action was heard and Eunice Ussery, the executrix of Leila's estate, was substituted as a party plaintiff. Ussery moved for partial summary judgment on the counterclaims arising from the alleged oral contract to make a will. The trial court granted the motion, and defendants appeal. For the reasons set forth below, we affirm the grant of Ussery's motion for partial summary judgment on the defendants' counterclaims for specific performance and quantum meruit, but reverse the grant of summary judgment as to the defendants' claim for breach of contract.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of

---

[9] See *Collins v. State*, 248 Ga. 687, 689 (2) (286 SE2d 8) (1982).

material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Footnote omitted.) *Aames Funding Corp. v. Henderson*, 275 Ga. App. 323 (620 SE2d 503) (2005). "To obtain summary judgment, a defendant need not produce any evidence but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim." *Mansell v. Starr Enterprises/Texaco*, 256 Ga. App. 257 (568 SE2d 145) (2002). In reviewing the grant or denial of summary judgment, we review the evidence de novo. *Federated Mut. Ins. Co. v. Ownbey Enterprises*, 278 Ga. App. 1 (627 SE2d 917) (2006).

So viewed, the evidence shows that Heyward Rushin and Leila Rushin married in 1973. They each had four children from a previous marriage. The defendants, Esther Rushin and Gloria Robinson, are Heyward Rushin's daughters. Ussery is Leila Rushin's daughter.

In 1995, Heyward and Leila decided to "move back closer to home" in light of health issues associated with their advancing age. The defendants had previously purchased a house on a three-acre tract of land in or near Macon. Esther suggested that her father and stepmother build a second home on the property so defendants "could look after them." Heyward and Leila funded construction of the house and moved into the home in August 1995.

Following the move, Heyward established several joint bank accounts in his, Leila's and Esther's names. According to Esther, her father wanted her to "oversee the safety of the accounts, particularly the ones he had basically earmarked for his children." These included a certificate of deposit ("CD") and money market account at SunTrust Bank and two CDs at the First Community Bank in Lizella.

Heyward died on March 15, 2001, after which his name was removed from the accounts, leaving Leila and Esther as joint account holders. On February 27, 2006, Leila gave a total of $25,000 to her four children and her brother from one of the accounts she held jointly with Esther. Esther, who was upset about the gifts, subsequently transferred most of the money in the joint accounts to accounts solely in her name. On March 24, 2006, Leila filed a complaint against Esther to recover the monies removed from the joint accounts. Leila died in May 2006, and Ussery was substituted as party plaintiff. By stipulation of the parties, Robinson was later added as a party defendant.

In their verified answer, defendants contended that they had entered into an oral agreement with Heyward and Leila. Pursuant to the alleged contract, Heyward and Leila agreed to make wills, which they promised not to revoke, bequeathing certain accounts to defendants, the defendants' brother, Cliff Rushin, and the defendants'

YALE LAW LIBRARY

nephew, William Joseph Roberts.[1] They also alleged that Heyward and Leila agreed not to draw down the principal and interest in the accounts. For their part, defendants agreed that the Rushins could build a structure on defendants' property and reside on the property rent free for the term of their natural lives, and that the defendants would provide personal living care and assistance for the same term. Defendants contended that Leila had breached this agreement[2] and asserted numerous counterclaims, including breach of contract, specific performance, and quantum meruit.

Ussery moved for partial summary judgment on defendants' claims arising from Leila's alleged oral contract to make a will. The trial court granted the motion, finding that the evidence did not show a mutual consent to contract, that the alleged agreement was not sufficiently definite to be enforced, and that ordering specific performance of the alleged contract would be unjust.

1. Defendants contend that the trial court erred in finding that the alleged oral contract to make a will lacked the mutual assent to contract. We agree.

A contract to make a will, supported by valuable consideration, is valid. *Wyrick v. Wyrick*, 256 Ga. 408, 408-409 (349 SE2d 705) (1986). An oral contract to make a will also may be valid and enforceable if entered into before January 1, 1998, as was alleged here.[3] See *Rigby v. Powell*, 233 Ga. 158, 160 (4) (210 SE2d 696) (1974), overruled on other grounds, *Wilson v. Nichols*, 253 Ga. 84, 85-86 (3) (316 SE2d 752) (1984). "However, such a contract must be definite, certain, and precise in its terms and its existence must be established beyond a reasonable doubt." Id. See *McLendon v. Priest*, 259 Ga. 59, 60 (376 SE2d 679) (1989); *Salmon v. McCrary*, 197 Ga. 281, 284-286 (29 SE2d 58) (1944). In this context, "the 'reasonable doubt' criterion, if the burden is to be couched in these words, refers not to the standard used by this court but to the jury's finding of the existence of the contract." *Peters v. Joyce*, 156 Ga. App. 183, 184 (1) (275 SE2d 343) (1980).

In their depositions, both Esther and Glenn Warren, the husband of Esther's niece, testified to Leila's assent to the alleged oral agreement. Ussery argues that Esther's contradictory testimony must nevertheless be construed against her. According to Esther, the terms of the agreement were reached when she met with Leila and

---

[1] Heyward's fourth child from his previous marriage, Audrey Roberts, was deceased.

[2] Evidence shows that at his death, Heyward's will devised all of his property to Leila. Leila subsequently made a will leaving her property to the defendants, Clifford Rushin, and William Roberts. Leila later revoked the will.

[3] On or after January 1, 1998, contracts to make a will are required to be in writing. OCGA § 53-4-30.

her father. Esther deposed:

> She [Leila] was just present during the discussion. I don't recall that she had a great deal to say one way or the other, because like I said, Dad was the one in charge of the money, you know, that type of thing, and so she pretty much went with whatever he recommended.

Ussery argues that Esther therefore testified two ways — one that Leila assented and the other that she was "just there," and that, in light of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), there was no evidence that Leila assented to the alleged agreement. See OCGA § 13-3-2 ("[t]he consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract").

*"Prophecy Corp.* stands for the proposition that self-contradictory testimony is construed against the equivocator, absent a reasonable explanation for the contradiction." *Korey v. BellSouth Telecommunications*, 269 Ga. 108, 108-109 (498 SE2d 519) (1998). However, "the opposing party is entitled to judgment only where the favorable portion of the party's self-contradictory testimony is the *only* evidence of his right to recover or of his defense." (Citation and punctuation omitted; emphasis in original.) Id. at 109. Pretermitting whether Esther's testimony is contradictory, Warren testified that he witnessed the discussion at issue and that Leila assented to the agreement; therefore, any application of the rule in *Prophecy Corp.* to Esther's testimony does not entitle Ussery to summary judgment. Id.

2. Defendants also contend that the trial court erred in finding as a matter of law that the details of the alleged contract lacked the specificity necessary to constitute an enforceable oral contract to make a will. We agree.

To be enforceable, an oral contract to make a will "must be definite, certain, and precise in its terms." *Rigby*, 233 Ga. at 160 (4). See *McLendon*, 259 Ga. at 60. Ussery argues that the agreement was indefinite as to the ultimate beneficiaries of the agreement and the specific accounts subject thereto. However, both are identified with particularity. According to Esther's affidavit, her father's and Leila's "wills were to be drawn to leave certain funds to each other for life with remainders over to Esther Rushin, Gloria Robinson, Cliff Rushin, and William Joseph Roberts."[4] Other testimony shows that

---

[4] Although during her testimony Esther indicated the parties' intent was to benefit Heyward's children, which would have literally included only herself, Robinson, and Cliff

these monies were to be divided equally between the beneficiaries. As to the accounts, Esther's affidavit and deposition identifies the specific assets to be devised.[5] Defendants' promise to provide "personal living care and services" was defined during the meeting in which the contract terms were agreed upon.[6]

Ussery also relies on the trial court's finding that the alleged contract was not sufficiently specific to be enforced. The trial court refers to numerous provisions which the contract "did not provide," including, for example, whether Heyward and Leila could sublet the premises, who made decisions as to repairs, rights of inspection, and whether pets were allowed. However, the parties need only agree to the essential terms of the contract, and the absence of agreement on nonessential terms does not render the agreement unenforceable. See *Henry v. Blankenship*, 275 Ga. App. 658, 660-661 (1) (a) (621 SE2d 601) (2005) (where claimant averred the parties had reached agreement on all essential terms of oral contract, the alleged agreement was not unenforceable as a matter of law). Further,

> [i]t is unnecessary that a contract state definitively and specifically all facts in detail to which the parties may be agreeing, but as to such matters, it will be sufficiently definite and certain if it contains matters which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves.

(Footnote omitted.) *Quadron Software Intl. Corp. v. Plotseneder*, 256 Ga. App. 284, 287 (1) (568 SE2d 178) (2002). See *McLendon*, 259 Ga. at 60-61 (oral contract to make a will was sufficiently definite following application of the rules of contract construction to undefined term). Accordingly, defendants presented evidence that the parties agreed to the essential terms of an oral contract to make a will which were sufficiently definite, certain, and precise to be enforceable.

---

Rushin, she almost immediately clarified that this included William Roberts, a nephew.

[5] She averred that "[t]hese wills were to apply to only certain funds including *Principal Only* from: 1. 2 $10,000 Certificates of Deposit at Community Bank; 2. 1 $60,000 Certificate of Deposit at SunTrust Bank with Heyward and Leila to draw down interest on Certificates of Deposit; and 3. Principal and interest from the Money Market Account at SunTrust Bank." (Emphasis in original.)

[6] According to Warren, during the meeting, "Heyward discussed all of the multitude of things that he felt they would become incapable of performing, and that the expectations would be that those things would be taken care of by his family as they lost their independence and capabilities to do those [things]." Heyward "gave examples of what he was looking for in care," including that defendants would take them to the doctor, run errands, cook meals, and provide in-home care when it was needed.

3. Defendants further contend that the trial court erred in finding that specific enforcement of the alleged contract would be unjust inasmuch as they laid no foundation for the value of their services. We disagree.

(a) The defendants argue that they established an "adequate underpinning" for the value of their services in light of Warren's testimony as to the value Leila received by living rent free under the terms of the agreement. "Evidence offered on motion for summary judgment is held to the same standards of admissibility as evidence at trial, and evidence inadmissible at trial is generally inadmissible on motion for summary judgment." (Punctuation and footnote omitted.) *Latimore v. City of Atlanta*, 289 Ga. App. 85, 86 (2) (656 SE2d 222) (2008). According to Warren, the value of the unpaid rent was $115,068.07, which he computed by referring to an Internal Revenue Service website. Warren did not purport to base his opinion on personal knowledge, nor did he claim a special knowledge, derived from experience or study, that would qualify him as an expert on rental values. See generally *Dayoub v. Yates-Astro Termite Pest Control Co.*, 239 Ga. App. 578, 579-580 (1) (521 SE2d 600) (1999). Further, to the extent that Warren was acting as a conduit for the website information, his testimony was inadmissible hearsay. See *Cantrell v. Northeast Ga. Med. Center*, 235 Ga. App. 365, 369-370 (4) (508 SE2d 716) (1998). Accordingly, the trial court did not err in concluding that the defendants had failed to establish an evidentiary foundation for the value of the services they provided under the alleged contract.

(b) The absence of competent evidence as to the value of their services was fatal to the defendants' specific performance claim.

> [S]ince specific performance is an altogether equitable remedy, and not one which can be demanded, merely by virtue of a proven agreement, as a matter of absolute right, it must be made to further appear that the contract is equitable and just, and a court will be justified in refusing a decree of performance should inadequacy of price appear, or any other fact showing the contract to be unfair, or unjust, or against good conscience. Thus, if the alleged contract sued on be based on an oral agreement to convey or devise land in consideration of the performance of ordinary personal services, the petition must not only show that the contract is precise in its terms, but must also allege the value of such services and the value of the land or specific data from which such relative values can be determined.

(Citation omitted.) *Ford v. White*, 255 Ga. App. 250, 252 (1) (564

SE2d 841) (2002).[7]

Not only did defendants fail to present any competent evidence of the value of their services, they failed to show the value of the benefit they received from the Rushins through their construction of a house on the defendants' property. Accordingly, Ussery pointed to an absence of evidence pursuant to which the trial court could assess whether the alleged contract was unfair, unjust, or against good conscience. See *Ford*, 255 Ga. App. at 254 (1) (plaintiff's failure to prove value of his services or value of estate resulted in proper grant of directed verdict to defendant on plaintiff's action for specific performance of oral contract to make a will). The trial court correctly concluded that Ussery was entitled to summary judgment on the defendants' specific performance claim.

4. Ussery contends that the defendants' counterclaim cannot stand in light of OCGA § 7-1-813 (e), which provides in applicable part that "[a] right of survivorship arising from the express terms of the account or under this Code section . . . cannot be changed by will." Ussery maintains that because Heyward predeceased Leila, the funds she previously held in joint accounts with Heyward "became hers to do with as she saw fit." Pretermitting whether Ussery's arguments are legally relevant, issues of material fact remain with respect to the establishment of the various joint accounts at issue in this case and it is premature to assess the effect of the law relating to joint accounts on defendants' counterclaims.[8]

5. Finally, we must consider which of the defendants' counterclaims remain outstanding. Ussery moved for a "partial summary judgment on defendants' counterclaim," which the trial court characterized as "asking the Court to rule . . . on all of Defendants' claims relating to the alleged oral contract to make a will."[9] The trial court subsequently granted the motion, concluding that "[t]he defendants have not made a case for the existence of a contract to make a will," but failed to specify which of the defendants' counter-

---

[7] The rule does not apply "where the petitioner agreed to go into the home of another to nurse the person and give such personal, affectionate, and considerate attention as could not readily be procured elsewhere, and where the value of such services could not readily be computed in money." (Citation omitted.) *Logan v. Logan*, 223 Ga. 574, 576 (2) (156 SE2d 913) (1967). The defendants do not, however, contend that the exception applies in this case.

[8] Furthermore, the right of survivorship contemplated by OCGA § 7-1-813 may be rebutted and may not ultimately apply. See OCGA § 7-1-813 (a); *James v. Elder*, 186 Ga. App. 810, 811-812 (368 SE2d 570) (1988).

[9] Ussery also moved for summary judgment seeking immediate possession of certain funds that Esther Rushin removed from joint checking accounts with Leila Rushin, but the trial court denied summary judgment on this issue.

claims fell within the scope of its ruling.

> [I]f there is a breach of any agreement, whether to devise or not to devise, an aggrieved party, or his representative, is not without a remedy. He or his representative, in a proper case, may recover upon quantum meruit, or for damages [for breach of contract], or for specific performance, . . . whichever remedy is appropriate.

*Thomas v. Roughton*, 227 Ga. 127, 131 (2) (179 SE2d 62) (1971). See *Banks v. Howard*, 117 Ga. 94, 96 (43 SE 438) (1903). The defendants asserted claims under all three theories and, inasmuch as they are the remedies associated with breach of an oral contract to make a will, the claims fall within the scope of the trial court's grant of summary judgment. The unavailability of the defendants' specific performance claim does not itself require the grant of summary judgment to Ussery on defendants' claims for breach of contract and quantum meruit. See generally *Wyrick*, 256 Ga. at 409-410 (as to alleged contract to make a will, summary judgment was proper as to specific performance claim, but grant of summary judgment reversed as to quantum meruit claim). Nevertheless, in order to recover in quantum meruit, the defendants must establish the reasonable value of their services. See *City of Calhoun v. North Ga. Elec. Membership Corp.*, 264 Ga. 205, 208 (2) (443 SE2d 469) (1994). Inasmuch as there is an absence of competent evidence of that value, we affirm the trial court's grant of summary judgment to Ussery on defendants' quantum meruit claim. See *Hollifield v. Monte Vista Biblical Gardens*, 251 Ga. App. 124, 130 (2) (b) (553 SE2d 662) (2001) (defendant's failure to offer proof of value, apart from his own opinion, of the benefit to plaintiff of defendant's services authorized grant of summary judgment to plaintiff on defendant's quantum meruit counterclaim). However, since the defendants presented evidence as to the existence and terms of the contract, the trial court's grant of summary judgment to Ussery on defendants' claim for breach of contract must be reversed. See, e.g., *Shilling v. Cornerstone Med. Assoc.*, 290 Ga. App. 169, 170-171 (659 SE2d 416) (2008) (summary judgment in contract action not proper where existence of contract was a disputed fact). Defendants' other counterclaims[10] appear to be outside the scope of the trial court's order for partial summary judgment and so remain outstanding. "This court is for the correction of errors, and where the trial court has not ruled on an issue, we will not

---

[10] Defendants also counterclaimed for declaratory judgment, constructive trust, injunctive relief for the return of the $25,000 withdrawn by Leila from the joint accounts with Esther Rushin, an accounting with respect to the accounts at issue, and attorney fees.

address it.'' (Footnote omitted.) *Carver v. Empire Fire &c. Ins. Co.*, 270 Ga. App. 100, 105 (605 SE2d 842) (2004). To the extent the trial court's order could be interpreted to include these claims, Ussery failed to establish that no material issues of fact remain outstanding and summary judgment thereon is not appropriate.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Phipps, J., concur.*

DECIDED JULY 9, 2009.

*Lane & Jarriel, Walter J. Lane, Jr.*, for appellants.
*Jones, Cork & Miller, Hubert C. Lovein, Jr.*, for appellee.