A10A2264. ANSLEY et al. v. ANSLEY.
(705 SE2d 289)

JOHNSON, Judge.

This is a dispute between appellants Ansley & Sutton Construction Company, Inc. (A&S), Jeffrey Ansley, and Michelle Ansley, and appellee Marcia Ansley, as administrator of the estate of Kevin Ansley, the deceased brother of Jeffrey and Michelle. The administrator contends that Jeffrey, Michelle, and A&S are obligated by their shareholders' agreement to purchase Kevin's interest in A&S from the estate. Jeffrey and Michelle contend that Kevin breached their oral agreement to make wills devising their respective shares to the surviving siblings or sibling. The trial court granted partial summary judgment to the administrator on these issues, and Jeffrey, Michelle, and A&S appeal. We reverse because the alleged oral agreement did not merge into a subsequent written agreement, because the parol evidence rule did not preclude proof of the oral agreement, and because Jeffrey's and Michelle's counterclaims arising out of the breach of the alleged oral agreement were not barred by the statute of limitation.[1]

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law.[2] Our review of a grant of summary judgment is de novo, and we view

---

not addressed by trial court).

[1] Kevin, Jeffrey, and Michelle also owned Ansley Brothers Dock Builders, Inc., a defendant in the administrator's action and a named appellant, but Kevin's shares in Ansley Brothers were not part of the administrator's motion for partial summary judgment.

[2] OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant.[3]

So viewed, the evidence shows that A&S and its two original shareholders entered into a Shareholders Agreement on November 19, 1987. Among other things, the 1987 Shareholders Agreement restricted the transfer of stock in A&S, was binding upon the parties and their respective executors, administrators, successors and assigns, and terminated upon A&S's bankruptcy or the disposal of the shareholders' stock after the removal of the transfer restrictions. One of the express purposes of the 1987 Shareholders Agreement's transfer restrictions was to provide for the purchase by A&S of the stock of a deceased shareholder. Accordingly, upon the death of a shareholder, the decedent's shares would be subject to the options to purchase otherwise provided in the agreement, but "[s]hould such options not be exercised, then [A&S] shall purchase or redeem all of the decedent's shares . . . ."

On April 1, 1992, Kevin, Jeffrey, and Michelle acquired A&S and became equal one-third shareholders. On the same date the three shareholders and A&S entered into an addendum to the 1987 Shareholders Agreement (the "1992 Shareholders Agreement") in which they each agreed to be bound by the terms of the prior agreement.

By late 1993 or early 1994, Kevin, Jeffrey, and Michelle became concerned about funding the buyout provisions adopted by the 1992 Shareholders Agreement and began discussing an alternative. They agreed that they would each devise their interest in A&S to the surviving sibling or siblings upon their death and that they would draw wills to effect that purpose. The agreement was not reflected in a writing.

In June 1994, Jeffrey signed a will containing the following provision:

> In the event either of KEVIN and MICHELLE survives me, I give and bequeath to them as tenants-in-common, or to the survivor of them in the event only one (1) of them survives me, all the equity interest (or proceeds from the redemption of same) I may own at the time of my death in our marine construction business, including but not limited to all my capital stock in [A&S].

Also in June 1994, Kevin and Michelle met with the attorney who drafted Jeffrey's will and they each confirmed a desire to include a provision in their wills which would effect a devise of their A&S stock

---

[3] *Supchak v. Pruitt*, 232 Ga. App. 680, 682 (1) (503 SE2d 581) (1998).

to their surviving sibling or siblings upon their death. The attorney prepared wills for Kevin and Michelle containing the requested language, and he forwarded a draft to Kevin in October 1995. Michelle signed a will in August 1997 in which she devised her equity interest in A&S, or proceeds from the redemption of the same, to her surviving siblings. Kevin "did not come in to sign [his] will." Kevin did, however, sign financial statements for purposes of A&S bank loans in 2000, 2001, 2002, 2003, and 2004 in which he represented he had a will.

At a special meeting of the board of directors on January 4, 2008, Kevin, Jeffrey, and Michelle signed minutes (the "2008 Shareholders Agreement") evidencing that "to ensure the viability of the Company, [Kevin, Jeffrey, and Michelle] agreed that none of their spouses (present or future) nor any of their children (present or future) shall possess now or in the future, any interest (financial or otherwise) in the Company." They further agreed to have their individual wills updated "with this express desire included in such Wills" and that their wills be updated and signed no later than December 2008. Kevin died intestate on August 10, 2008.

After Kevin's death, the administrator sued A&S, Jeffrey, and Michelle seeking, among other things, a judgment that Jeffrey, Michelle, and A&S be required to purchase Kevin's one-third interest in A&S from the estate in accordance with the buyout provisions of the 1987 Shareholders Agreement, as adopted by the 1992 Shareholders Agreement. A&S, Jeffrey, and Michelle denied the administrator's claims, and Jeffrey and Michelle counterclaimed to specifically enforce the oral agreement to make a will or for breach of contract in the alternative. The trial court subsequently granted the administrator's motion for partial summary judgment on her claim for enforcement of the buyout provision and on Jeffrey's and Michelle's counterclaim. This appeal followed.

1. A&S, Jeffrey, and Michelle argue that they are not bound by the buyout provisions adopted by the 1992 Shareholders Agreement because those provisions are no longer in effect. The 1987 Shareholders Agreement was not for a specific duration. A&S, Jeffrey, and Michelle contend that it nevertheless expired on November 19, 2007, by operation of OCGA § 14-2-732 (b) (3), which provides that an agreement authorized by that Code section is valid for no more than 20 years.[4] Therefore, they maintain, because the 1992 Shareholders Agreement adopted the terms of the 1987 Shareholders Agreement,

---

[4] "An agreement authorized by this Code section shall be: . . . Valid for no more than 20 years. Failure to state a period of duration or stating a period of duration in excess of 20 years shall not invalidate the agreement, but in either case the period of duration shall be 20 years." OCGA § 14-2-732 (b) (3).

which expired on November 19, 2007, the 1992 Shareholders Agreement also expired on that date. We disagree.

OCGA § 14-2-732 was enacted in 2000,[5] and as described in the official comment thereto "validates for nonpublicly held corporations various types of agreements among shareholders even when the agreements are inconsistent with the statutory norms otherwise contained in this Code." OCGA § 14-2-732 is not expressly retroactive, and, pretermitting its application to shareholder agreements evidencing restrictions on the transfer of shares,[6] we will not apply it to insert a material term into a 1987 agreement, the provisions of which were adopted by different parties in 1992. As a rule, "[a] newly enacted law cannot impair the obligations of an existing contract."[7]

2. A&S, Jeffrey, and Michelle also claim that the trial court erred in finding that the oral agreement to make a will was not enforceable because Jeffrey's and Michelle's claims were barred by the statute of limitation and because the oral agreement was superceded by the 2008 Shareholders Agreement. We agree.

Contracts to make a will are enforceable if supported by valuable consideration, and "[a]n oral contract to make a will also may be valid and enforceable if entered into before January 1, 1998. . . ."[8] Although the trial court found that Jeffrey's and Michelle's counterclaims arising out of the alleged breach of the oral contract to make a will were untimely, their claims accrued upon Kevin's death and were not barred by the statute of limitation.[9]

The trial court also found that the oral agreement merged into the 2008 Shareholders Agreement and that it was not admissible as parol evidence to explain the written agreement. As a rule, "a prior

---

[5] See Ga. L. 2000, p. 1567. Shareholder agreements providing for the voting of shares or restrictions on the board of directors were contemplated by predecessor statutes in effect at the time of the 1987 and 1992 Shareholders Agreements, and such agreements were limited to a duration of 20 years, but A&S, Jeffrey, and Michelle do not rely on prior law. See OCGA § 14-2-731 (1992); Ga. L. 1968, p. 624.

[6] "[A]n agreement among shareholders, or an agreement between shareholders and the corporation may impose restrictions on the transfer or registration of transfer of shares of the corporation," and "[a] restriction on the transfer or registration of transfer of shares may: . . . (2) [o]bligate the corporation or other persons (separately, consecutively, or simultaneously) to acquire the restricted shares." OCGA § 14-2-627 (a), (d). No term limitation is contemplated by this statute, which was in effect at the time of the 1992 Shareholders Agreement. See *Brown v. Momar, Inc.*, 201 Ga. App. 542, 545 (2) (411 SE2d 718) (1991) ("restrictions on the transferability of stock are enforceable in this State").

[7] *Marek Interior Systems v. White*, 230 Ga. App. 518, 520 (1) (496 SE2d 749) (1998).

[8] *Rushin v. Ussery*, 298 Ga. App. 830, 832 (1) (681 SE2d 263) (2009). For purposes of summary judgment, the administrator does not contest the existence of the oral agreement.

[9] See OCGA § 9-3-25; *Wallace v. Williams*, 212 Ga. 692, 695 (2) (95 SE2d 369) (1956); *Banks v. Howard*, 117 Ga. 94, 96-97 (3) (43 SE 438) (1903) (in suit for breach of an agreement to make a will, "the death of the other party without making the will in accordance with his agreement is to be deemed a breach of the contract, and the statute of limitations will not begin to run until his death").

or contemporaneous parol agreement, which contradicts, varies, or otherwise modifies a written agreement between the same parties and pertaining to the same subject-matter, is merged into the written agreement. . . ."[10] Similarly, "the parol evidence rule prohibits the consideration of evidence of a prior or contemporaneous oral agreement to alter, vary or change the unambiguous terms of a written contract."[11]

However,

> [a] party is entitled to prove the existence of any separate oral agreement as to any matter on which a document is silent, and which is not inconsistent with its terms, if from the circumstances of the case the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transactions between them.[12]

Here, the 2008 Shareholders Agreement does not purport to be the entire agreement between the parties through inclusion of a merger clause or similar language.[13] The written agreement precluding spouses and children of the shareholders from having any interest in A&S, "now or in the future," is consistent with the oral agreement. Further, the alleged obligation to devise under the oral agreement is a matter on which the 2008 Shareholders Agreement is silent.[14] We conclude that the alleged oral contract does not come within the parol evidence rule in that it is "an independent and complete contract within itself and forms no part of the written contract. Neither does it alter in any respect the writing. It is collateral to, independent of, and distinct from the written contract."[15] Further, the alleged oral agreement's "independence and its lack of inconsis-

---

[10] *Indiana Truck Corp. v. Glock*, 46 Ga. App. 519 (168 SE 124) (1933).

[11] (Punctuation and footnote omitted.) *First Data POS v. Willis*, 273 Ga. 792, 794 (1) (546 SE2d 781) (2001).

[12] (Citation and punctuation omitted.) *Henry v. Blankenship*, 275 Ga. App. 658, 659 (1) (a) (621 SE2d 601) (2005). Accord *Namik v. Wachovia Bank of Ga.*, 279 Ga. 250, 251 (1) (612 SE2d 270) (2005); *Langenback v. Mays*, 205 Ga. 706, 711 (1) (54 SE2d 401) (1949).

[13] See *Jones v. The Baran Co.*, 290 Ga. App. 578, 582 (660 SE2d 420) (2008).

[14] Compare *Triple Net Properties v. Burruss Dev. &c.*, 293 Ga. App. 323, 327 (2) (a) (667 SE2d 127) (2008) ("An existing contract is superseded and discharged whenever the parties subsequently enter upon a valid and inconsistent agreement completely covering the subject-matter embraced by the original contract.") (citation and punctuation omitted).

[15] *Langenback*, supra, 205 Ga. at 711 (1). See *Diamondhead Corp. v. Robinson*, 144 Ga. App. 60, 62 (2) (240 SE2d 572) (1977) ("The test to determine whether the oral agreement is one which the law will permit to be plead and proved is whether the oral agreement constitutes a part of the written contract or whether, instead, it is a separate and distinct oral contract which is not inconsistent with the written contract. If the latter, it admits of pleading and proof.") (citation and punctuation omitted).

tency with the written contract cause it not to become merged with the written contract."[16]

The administrator asserts that, in addition to the reasons relied on by the trial court, the oral agreement is unenforceable because it conflicts with the 1987 Shareholders Agreement, as incorporated into the 1992 Shareholders Agreement. The evidence is sufficient, however, to establish the mutual intent of the existing shareholders to devise their shares, and their mutual consent to and actual notice of such disposition as an alternative to the buyout provisions incorporated into the 1992 Shareholders Agreement. Accordingly, a trier of fact could conclude that Kevin waived his rights to enforce inconsistent provisions of their prior shareholders' agreement, including the buyout provision.[17] "A waiver may be express, or may be inferred from actions, conduct, or a course of dealing. Waiver of a contract right may result from a party's conduct showing his election between two inconsistent rights."[18] *American Car Rentals v. Walden Leasing*,[19] relied on by the administrator, is distinguishable in that the contract at issue included a no waiver clause protecting the appellee from failure to insist on performance of any term or condition, and in that case "the parties proceeded according to the terms of the Agreement."[20]

3. A&S, Jeffrey, and Michelle further contend the trial court erred in failing to consider parol evidence in construing the 2008 Shareholders Agreement. We agree with the trial court that A&S, Jeffrey, and Michelle could not use parol evidence to vary the terms of the written agreement.[21] Consistent with our analysis in Division 2, however, the parol evidence rule did not preclude proof of the alleged oral agreement, which was separate and distinct from the latter written contract.[22]

In view of the foregoing, we conclude that the trial court erred in granting the administrator's motion for partial summary judgment.

*Judgment reversed. Miller, C. J., and Phipps, P. J., concur.*

---

[16] *Langenback*, supra, 205 Ga. at 711 (1).

[17] See *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 257 (3) (381 SE2d 322) (1989) ("The question whether the parties' mutual conduct caused a waiver and effected a quasi-new agreement ordinarily is a question for the jury. [Cit.]").

[18] (Citation and punctuation omitted.) Id. See *Park v. Fortune Partner*, 279 Ga. App. 268, 272 (2) (b) (630 SE2d 871) (2006) (defendant waived right to enforce plaintiff's promises).

[19] 220 Ga. App. 314 (469 SE2d 431) (1996).

[20] Id. at 316 (1) (a).

[21] See *Andrews v. Skinner*, 158 Ga. App. 229, 230 (279 SE2d 523) (1981) ("[P]arol evidence is admissible to explain an ambiguity in a written contract, although such evidence is inadmissible to add to, take from, or vary the writing itself. [Cits.]").

[22] See OCGA § 24-6-2; *Diamondhead Corp. v. Robinson*, supra, 144 Ga. App. at 62 (2).

DECIDED DECEMBER 14, 2010.

*Ronald C. Berry*, for appellants.
*Alan S. Lowe, Ellen Schoolar*, for appellee.