### A00A1024. BLITCH v. PEOPLES BANK.
(540 SE2d 667)

JOHNSON, Chief Judge.

Under Georgia's dissenters' rights statute, which is modeled after the Revised Model Business Corporations Act, shareholders in a corporation may dissent from certain corporate actions and be paid the fair value of their shares.[1] Although Georgia's statute does not

---

[1] OCGA § 14-2-1302 (a).

expressly indicate whether a court may discount the fair value of shares because the shareholder is in the minority or because there is no public market for the shares, the Model Act was recently amended to provide that such minority and marketability discounts are improper.[2] And the majority of states with dissenters' rights statutes like ours have held that such discounts should not be applied in determining fair value.[3] Are minority and marketability discounts applicable in determining the fair value of dissenters' shares under the Georgia statute? Like the Model Act and the majority of other jurisdictions, we conclude that such discounts should not be applied in determining the fair value of dissenters' shares.

In 1997, J. Dan Blitch III owned 763.5 shares of stock in the Peoples Bank. His shares amounted to 5.5 percent of the Bank's outstanding stock. The Peoples Holding Company owned the remaining shares. On several occasions, the Bank management asked Blitch to relinquish his shares, but he refused.

In October 1997, the Bank merged with an interim corporation that was wholly owned by the Holding Company. As a result of the merger, Blitch ceased being a shareholder of the Bank, and the Holding Company became its sole owner. Blitch dissented from the merger, thus entitling him to receive the fair value of his shares as of the merger date.

The Bank filed a petition under OCGA § 14-2-1330, seeking a determination of the fair value of Blitch's 763.5 shares at the time of the merger. A nonjury trial was held, and the parties presented expert testimony on the value of the shares. The Bank's expert, who discounted the share value because Blitch was a minority shareholder and because there was no public market for the shares, concluded that each share was worth $1,214. Blitch's expert, who did not apply either a minority shareholder or lack of marketability discount, determined that each share was worth $2,342.

The trial court rejected the valuation of Blitch's expert because, among other things, he failed to use minority and marketability discounts. The court found the valuation of the Bank's expert to be generally sound, applied minority and marketability discounts, and concluded that the fair value of each share was $1,418. Based on that per share value, the court entered judgment for Blitch in the amount of $1,083,185, plus interest. The court also denied the parties' opposing requests for attorney fees.

Blitch appeals, claiming that the court erroneously applied the minority shareholder and lack of marketability discounts and

---

[2] 54 Bus. Law. 251, 256-257 (1998); 55 Bus. Law. 405 (1999).

[3] See discussion in *Lawson Mardon Wheaton, Inc. v. Smith*, 160 N.J. 383, 401 (734 A2d 738) (1999).

improperly refused to award him attorney fees. While the court did not abuse its discretion in refusing to award attorney fees, the court did err in applying the discounts to the value of Blitch's shares. We therefore affirm the trial court's denial of attorney fees and reverse the judgment as to the value of the shares.

1. As the Supreme Court has explained, at common law a corporation needed unanimous shareholder consent for fundamental corporate changes.[4] This unanimity requirement allowed minority shareholders to establish a nuisance value for their shares by refusing to cooperate in proposed changes.[5] In response to this situation, legislatures authorized corporations to make changes by majority vote, which in turn led to victimization of minority shareholders.[6] To solve the dilemma, legislatures have adopted statutes which permit minority shareholders who dissent from corporate action to recover the value of their shares.[7]

In 1968, Georgia's legislature adopted the dissenting shareholders statute from the New York Business Corporation Law.[8] The statute provided that shareholders who dissent from corporate action must be paid the fair value of their shares as of the close of business on the day prior to the date of the shareholders' vote authorizing the action.[9] The statute did not provide a method for determining fair value and did not indicate whether courts should apply discounts for minority shares and lack of marketability in calculating fair value.[10]

In 1984, this court issued its only opinion addressing the question of discounts, finding that discounts may be considered in determining fair value, but cautioning against overemphasizing them.[11] That opinion, however, is nonbinding physical precedent because the judgment was not fully concurred in by all the judges ruling on the case.[12]

In 1988, Georgia revised its Business Corporation Code, including the dissenters' rights statute, to follow the Revised Model Business Corporation Act.[13] Based on the Model Act, Georgia's new dissenters' rights statute still provides that a shareholder of a corporation is entitled to dissent from various corporate actions and

---

[4] *Voeller v. Neilston Warehouse Co.*, 311 U. S. 531, 535, n. 6 (61 SC 376, 85 LE 322) (1941).

[5] Id.

[6] Id.

[7] Id.

[8] *Atlantic States Constr. v. Beavers*, 169 Ga. App. 584, 586 (2) (314 SE2d 245) (1984) (physical precedent only).

[9] Id. at 586 (3).

[10] Id.

[11] Id. at 588-589 (6) (d), (e).

[12] See Court of Appeals Rule 33 (a).

[13] Ga. L. 1988, p. 1070; OCGA § 14-2-101 Comment.

be paid the fair value of his shares.[14] The new statute defines fair value as "the value of the shares immediately before the effectuation of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of the corporate action."[15] Like the former dissenters' rights statute, the current statute is silent on whether courts should apply minority and lack of marketability discounts in determining fair value.

There is no Georgia case law interpreting fair value under our current statute. But the majority of other jurisdictions with similar statutes have held that minority and marketability discounts should not be applied when determining the fair value of dissenting shareholders' stock.[16] These courts have reasoned that using discounts injects speculation into the appraisal process, fails to give minority shareholders the full proportionate value of their stock, encourages corporations to squeeze out minority shareholders, and penalizes the minority for taking advantage of the protection afforded by dissenters' rights statutes.[17]

Reflecting this majority view, the Model Act definition of fair value was modified in 1999. While the Model Act still defines fair value as the value of the shares immediately before the effectuation of the corporate action that the shareholder objects to, it now expressly provides that fair value should be determined without discounting for lack of marketability or minority status.[18] The Official Comment to the new Model Act explains:

> Subsection (iii) of the definition of "fair value" establishes that valuation discounts for lack of marketability or minority status are inappropriate in most appraisal actions, both because most transactions that trigger appraisal rights affect the corporation as a whole and because such discounts give the majority the opportunity to take advantage of minority shareholders who have been forced against their will to accept the appraisal-triggering transaction. Subsection (iii), in conjunction with the lead-in language to the definition, is also designed to adopt the more modern view that appraisal should generally award a shareholder his or her proportional interest in the corporation after valuing the corporation as a whole, rather than the value of the share-

---

[14] OCGA § 14-2-1302 (a).

[15] OCGA § 14-2-1301 (5).

[16] See *Lawson Mardon Wheaton*, supra. See also *Hansen v. 75 Ranch Co.*, 55 Mont. St. Rep. 322 (957 P2d 32) (1998); *Security State Bank v. Ziegeldorf*, 554 NW2d 884, 888-889 (Iowa 1996).

[17] *Lawson Mardon Wheaton*, supra at 401-402.

[18] 54 Bus. Law. 251; 55 Bus. Law. 405.

holder's shares when valued alone.[19]

When Georgia changed its Business Corporation Code in 1988 to follow the Model Act, comments to the new Code provided: "To the extent this statute follows the Model Act, the Official Comments to the Model Act should be regarded as providing guidance to the interpretation of this Code."[20] And while Georgia has not yet adopted the Model Act's recent change explaining the definition of fair value, we nevertheless are guided by the Model Act's change and its official comments in interpreting the meaning of fair value under our Code. Likewise, we find the reasoning of the majority of jurisdictions rejecting minority and marketability discounts to be persuasive.

Accordingly, based on the clear expression by the amended Model Act and the sound reasoning of the majority view, we find that under Georgia's dissenters' rights statute a court should not apply minority or marketability discounts in determining the fair value of dissenters' shares.[21] Rather, the term fair value in our statute encompasses the modern view expressed by the Model Act that a shareholder should generally be awarded his or her proportional interest in the corporation after valuing the corporation as a whole.

In the instant case, the trial court thus erred in applying minority and marketability discounts in calculating the fair value of Blitch's shares. We therefore reverse the trial court's judgment as to the fair value of Blitch's shares and remand the case with direction that it recalculate the value of those shares without discounting for lack of marketability or minority status.

2. Generally, in appraisal actions such as this one, the court shall assess the costs of the proceeding, but not attorney fees, against the corporation.[22] The court may, however, assess attorney fees against either party — the corporation or the dissenter — if the court finds that the party against whom fees are assessed acted arbitrarily, vexatiously, or not in good faith.[23]

Here, the trial court found that the Bank did not act arbitrarily, vexatiously, or in bad faith. Instead, the court found that the dispute between the Bank and Blitch as to the value of the shares was genuine and the parties had acted in good faith. Because the award of attorney fees is a matter fully within the trial court's discretion, we

---

[19] 54 Bus. Law. 256-257.

[20] Comment to OCGA § 14-2-101.

[21] Because *Atlantic States Constr. v. Beavers,* supra, is physical precedent only and interprets the former statute, it need not be overruled to the extent it is in conflict with this holding.

[22] See OCGA § 14-2-1331 (a); *VSI Enterprises v. Edwards,* 238 Ga. App. 369, 375 (2) (518 SE2d 765) (1999).

[23] OCGA § 14-2-1331 (a).

will not reverse the denial of such an award absent an abuse of that discretion.[24] Blitch has shown no abuse of discretion by the trial court, and therefore the denial of Blitch's request for attorney fees is affirmed.

3. Because of our holding in Division 1, we need not address Blitch's remaining enumerated errors concerning the trial court's calculation of the value of his shares.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Smith, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 23, 2000 — ▮

*Kidd & Vaughan, James D. Blitch, Brinson, Askew, Berry, Seigler, Richardson & Davis, C. King Askew*, for appellant.

*Kilpatrick Stockton, Stephen E. Hudson, Jordana R. Sternberg*, for appellee.

[24] See generally *Head v. Head*, 234 Ga. App. 469, 477-478 (4) (507 SE2d 214) (1998).