In the Supreme Court of Georgia

Decided:   May 9, 2016

S16A0177.  WILLIFORD v. BROWN.

NAHMIAS, Justice.

The issue in this case is whether equitable relief is available in Georgia for an adult child of an elderly but competent parent to compel the parent's new spouse to give the child unimpeded access to the parent. The trial court held that such relief is not available, and we affirm that judgment.

1.     On February 10, 2015, Tamara Williford filed a "Petition for Equitable Relief" against Mary Ann Brown in the Superior Court of Hart County. The petition alleged that Mrs. Brown's husband, Tommy S. Brown, is Ms. Williford's biological father; that Mr. Brown is in poor physical health and cannot leave home but is in good mental condition and can make decisions for himself; that Ms. Williford and Mr. Brown have a good relationship, used to talk on the telephone regularly, and until recently saw each other in person; and that Mr. Brown would like to see and speak to Ms. Williford but is prevented from doing so by Mrs. Brown. The petition requested an order requiring Mrs. Brown

to allow Ms. Williford unimpeded personal access to Mr. Brown or appointing a guardian ad litem for Mr. Brown to ascertain his wishes. Mrs. Brown filed an answer denying that Ms. Williford is Mr. Brown's biological daughter, that he is in poor health, that he wishes to have contact with Ms. Williford, and that Mrs. Brown has interfered in any way with Ms. Williford's access to Mr. Brown.

Mrs. Brown also filed a motion to dismiss the petition for failure to state a claim upon which relief can be granted. See OCGA § 9-11-12 (b) (6). Ms. Williford filed a response, acknowledging that no Georgia statute or case law gives an adult child a right of unimpeded access to a competent parent. Ms. Williford argued that the trial court nevertheless could exercise its equitable powers to craft a remedy allowing her to visit and communicate with Mr. Brown without interference from Mrs. Brown or to appoint a guardian ad litem to check on Mr. Brown's welfare and report his wishes to the court. On June 30, 2015, the trial court entered an order dismissing the petition. Ms. Williford filed a timely appeal to this Court, which was orally argued on February 8, 2016.

2. Before considering the merits of this appeal, we address our jurisdiction to decide it. See Lay v. State, 289 Ga. 210, 211 (710 SE2d 141)

(2011) ("'[I]t is the duty of this Court to inquire into its jurisdiction in any case in which there may be a doubt about the existence of such jurisdiction.'" (citation omitted)). Ms. Williford's notice of appeal invoked this Court's current general appellate jurisdiction over "[a]ll equity cases." Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (2).[1] As we have consistently held for the past quarter-century,

> "Whether an action is an equity case for the purpose of determining jurisdiction on appeal depends upon the issue raised on appeal, not upon how the case is styled nor upon the kinds of relief which may be sought by the complaint. That is, 'equity cases' are those in which a substantive issue on appeal involves the legality or propriety of equitable relief sought in the superior court – whether that relief was granted or denied. Cases in which the grant or denial of such relief was merely ancillary to underlying issues of law, or would have been a matter of routine once the underlying issues of law were resolved, are not 'equity cases.'"

---

[1] During this year's legislative session, the General Assembly passed, and the Governor has now signed into law, House Bill 927, the "Appellate Jurisdiction Reform Act of 2016." Ga. L. 2016, p. ___, § 1-1. For cases in which a notice of appeal or application to appeal is filed on or after January 1, 2017, see id. § 6-1 (c), the Court of Appeals will have appellate jurisdiction over "[a]ll equity cases, except those cases concerning proceedings in which a sentence of death was imposed or could be imposed and those cases concerning the execution of a sentence of death," as well as other categories of civil cases that currently come directly to this Court. Id. § 3-1 (to be codified as OCGA § 15-3-3.1 (a) (2)). Review by this Court will remain available in such cases, but only by writ of certiorari or if the Court of Appeals is evenly divided or certifies a question here. See Ga. Const. of 1983, Art. VI, Sec. V, Par. V (equally divided Court of Appeals); Art. VI, Sec. VI, Par. IV (certified question of law from Court of Appeals); Art. VI, Sec. VI, Par. V (certiorari).

3

Durham v. Durham, 291 Ga. 231, 232 (728 SE2d 627) (2012) (quoting

Beauchamp v. Knight, 261 Ga. 608, 609 (409 SE2d 208) (1991)).

Most cases that come within this Court's traditional equity jurisdiction do so because the trial court balanced the equities in determining whether to grant or deny a well-established form of equitable relief, and the issue on appeal is the propriety of the relief that was granted or denied. Here, however, the trial court did not balance the equities in denying Ms. Williford the relief she requested. But neither was the equitable relief she sought merely ancillary to the resolution of an underlying issue of law that is now the subject of appeal. Indeed, Ms. Williford acknowledged that no Georgia statute or case law directly applies to her situation – an adult child claiming that she is being denied access to her elderly father by his new spouse – and she explicitly asked the trial court to exercise its powers as a court of equity to craft a remedy for her situation. See OCGA § 15-6-8 (2) ("The superior courts have authority . . . [t]o exercise the powers of a court of equity. . . .").

Under the current appellate jurisdiction scheme, this Court, rather than the Court of Appeals, should decide in the first instance whether the novel equitable remedy that was sought in and denied by the trial court is available in Georgia

4

– that is, the issue of "the legality . . . of [the] equitable relief sought in the superior court." Beauchamp, 261 Ga. at 609. See also Stark v. Hamilton, 149 Ga. 227, 228, 230 (99 SE 861) (1919) (affirming the equitable remedy crafted by the trial court after noting that "[t]he case under consideration differs on its facts from any case heretofore decided by this court and from any of the cases cited from other States"). Accordingly, we will retain Ms. Williford's appeal.

We note, however, that because we decide below that the equitable remedy that Ms. Williford seeks is *not* available under Georgia law, a request in a *future* case for the same remedy on similar facts would be properly denied based on the legal precedent established in this case, and thus that decision if challenged on appeal would not invoke our equity jurisdiction under Beauchamp. Cf. Zepp v. Mayor & Council of Athens, 255 Ga. 449, 451 (339 SE2d 576) (1986) (holding that where this Court has upheld a law against a constitutional attack, future cases raising the same attack do not come within this Court's appellate jurisdiction over constitutional questions). We also note, blissfully, that the need for Georgia's appellate courts and appellate litigants to engage in many intricate jurisdictional analyses of this sort will dissipate as of January 1, 2017. See footnote 1 above.

5

3.     On the merits, Ms. Williford contends first that the trial court "erred when it ruled it cannot hear equitable petitions regarding domestic matters." This contention mischaracterizes the trial court's ruling. The court's order dismissing Ms. Williford's petition did note that, "as a general matter, equity should not interfere in domestic matters," but the court then went on to discuss and distinguish cases involving domestic matters where this Court held that an equitable remedy was available. For example, the trial court cited Stark, where this Court affirmed an equitable remedy granted to the father of a minor girl debauched by a man who had "induced her to abandon her parental abode and live with him in a state of adultery and fornication," explaining:

> "While courts of equity are reluctant to interpose in controversies growing out of merely personal or domestic relations, and will ordinarily leave the parties to pursue the remedies open to them in the courts of common law, still when 'property rights or questions concerning property arise between husband and wife, parent and child, [or] guardian and ward,' jurisdiction will be taken, in a proper case, in order that full and adequate relief may be granted to the injured party, [and this principle also applies where] 'the complainant's status and personal rights were . . . threatened or . . . invaded by the action of the defendants . . . .'"

149 Ga. at 229 (citations omitted)). See also Crawford v. Wilson, 139 Ga. 654, 654 (78 SE 30) (1913) (recognizing the equitable remedy of "virtual adoption").

6

Thus, contrary to Ms. Williford's assertion, the trial court did not flatly rule that it could not hear her equitable petition because it involved a domestic matter. Instead, the court properly recognized equity's general reluctance to interfere in cases involving personal and domestic matters that do not also implicate the plaintiff's legal status or personal or property rights before explaining why, under the case law, an equitable remedy was not appropriate in Ms. Williford's case. Accordingly, Ms. Williford's first enumeration of error lacks merit.

Ms. Williford next contends that the trial court "erred when it ruled an adult child does not have a right to unrestrained visitation with a parent." However,

> [e]quity jurisdiction is established and allowed for the protection and relief of parties where, from any peculiar circumstances, the operation of the general rules of law would be deficient in protecting from anticipated wrong or relieving for injuries done.

OCGA § 23-1-3. Thus, a party invoking the power of a court to craft an equitable remedy must first identify some legally cognizable "wrong" or "injur[y]" that needs to be remedied. Ms. Williford acknowledges that no Georgia statute or case gives adult children a right to unrestrained visitation with

7

a parent who is not incompetent. Thus, even if Ms. Williford were undisputedly the biological child of Mr. Brown, and even if Mrs. Brown were her biological mother, Ms. Williford has identified no cognizable wrong or injury that requires a remedy, legal or equitable. The trial court properly held that, even accepting as true the facts alleged in Ms. Williford's petition, she failed to state a claim upon which relief could be granted. Accordingly, her second enumeration of error also lacks merit.[2]

The authorities on which Ms. Williford relies do not require a different result. As the trial court explained, Stark involved a father's property right to the benefits of his minor child's labor. See 149 Ga. at 230-231. Toler v. Goodin, 200 Ga. 527 (37 SE2d 609) (1946), was a "virtual adoption" case like Crawford, which the trial court cited and distinguished, and like all virtual adoption cases, Toler involved property rights based on an alleged unwritten agreement with partial performance. See Toler, 200 Ga. at 534 ("This was not a suit to require any one to adopt the plaintiff, but it was a suit to establish title

_____

[2] Ms. Williford did not allege in her petition and does not claim on appeal that Mrs. Brown has prevented Mr. Brown from leaving his home or communicating with persons other than Ms. Williford. Accordingly, we need not address the situation where a person is allegedly being held completely incommunicado illegally and against his will. See OCGA § 9-14-1 (general habeas corpus statute).

8

to property by decreeing the plaintiff entitled thereto as a child of the alleged obligors, just as though she had been legally adopted according to the alleged agreement.").

Ms. Williford also relies on <u>Gearllach v. Odom</u>, 200 Ga. 350 (37 SE2d 184) (1946), which involved a man's equitable claim to set aside his marriage to a woman who was already married. At the time, Georgia's divorce laws did not recognize a prior undissolved marriage as a valid ground for divorce, so the trial court granted the wife's general demurrer. This Court reversed, explaining:

> Should both of these parties die and the [wife's] representative or heirs make claim to the [husband's] estate, they would under this legal presumption have all the rights a valid marriage would give the [wife]. The burden would then be upon the [husband's] representative or heirs, as the case may be, to prove that the [wife's] previous marriage had not been dissolved. In that situation she, being dead, could not disclose whether or not she had procured a divorce, and it would become necessary to examine all court records where such a divorce might lawfully have been granted. This would include examination of court records of 159 counties in this State, similar records of other States, and even foreign countries. These considerations require a candid admission that the relief here sought is important and essential to the full protection of vital and far-reaching [property] rights and interests of the [husband].

Id. at 353. By contrast, Ms. Williford did not allege any threat to her legal status or identify any actual or threatened invasion of her personal or property rights

9

as a result of Mrs. Brown's alleged interference with her ability to visit or communicate with Mr. Brown.

Finally, in her brief on appeal, Ms. Williford relies heavily on OCGA § 36-12-3, which says:

> The father, mother, or child of any pauper contemplated by Code Section 36-12-2, if sufficiently able, shall support the pauper. Any county having provided for such pauper upon the failure of such relatives to do so may bring an action against such relatives of full age and recover for the provisions so furnished. The certificate of the judge of the probate court that the person was poor and was unable to sustain himself and that he was maintained at the expense of the county shall be presumptive evidence of such maintenance and the costs thereof.

Putting aside Ms. Williford's failure to cite this statute in the trial court, § 36-12-3 does not purport to confer on adult children a right to unrestrained visitation with their parents. Moreover, Ms. Williford did not allege in her petition that Mr. Brown is a "pauper," much less that she believes that Hart County has or will ever have to maintain him at county expense and will then pursue an action against her. Thus, OCGA § 36-12-3 provides no basis for the equitable relief Ms. Williford seeks.

Judgment affirmed. All the Justices concur.

10