301 Ga. 195
FINAL COPY

S17A0528. WALLACE v. WALLACE et al.

GRANT, Justice.

The fate of Dorsey "Doss" Wallace's stock in the family business, Wallace Electric Company, has caused a remarkable amount of disagreement between Doss and his brothers, Gary and Phillip Wallace. The parties offered competing narratives in the case below about which agreement, if any, governed the ownership of stock in Wallace Electric, and about what the terms of those agreements would require. The trial court ultimately concluded in a bench trial that Doss should be paid $54,200 for his stock. But because the court correctly admitted that its order did not reach the factual or legal conclusions required to resolve this case, we vacate the order below and remand for proper consideration of, and conclusions regarding, the legal questions at issue in this case.

I.

Wallace Electric Company was incorporated in 1959 by the parties' father. In 1988, when all three brothers were working for Wallace Electric, their father awarded Gary and Phillip each a 25% share of stock in the company, awarded Doss a 16.67% share, and kept a 33.33% share for himself. Their father owned and managed the business until his death in 2000. After their father's death, Gary and Phillip took over the management of Wallace Electric. Doss, on the other hand, had been employed at Wallace Electric sporadically until his employment ended in 1994. The parties agree that the ownership of stock in Wallace Electric was intended to be reserved for employees of the company.

In 2011, following an apparent series of family disputes, Doss filed a complaint for accounting and damages against Gary and Phillip, alleging that they had deprived Doss of his lawful interests as a shareholder of Wallace Electric.[1] During discovery, Doss filed a motion seeking a court-supervised accounting and buyout of his minority shareholder interest in Wallace Electric. Doss argued that the Wallace Electric Bylaws, which were enacted in 1959,

_____

[1] The record reflects that Doss's original complaint named only Gary and Phillip as defendants; Wallace Electric was added as a defendant in 2012. Gary, Phillip, and Wallace Electric are referred to collectively as "Appellees."

2

controlled the parties' dispute. He alleged that the Bylaws restricted the retention, sale, and disposition of a shareholder's stock, as outlined in the following provision:

> [I]f the employment of any stockholder or officer is terminated, for any reason, the corporation shall have the right and duty to purchase all the stock of said employee or officer and the former officer or employee shall be obligated to sell his stock pursuant to these by-laws.
> The purchase price, in any event, shall be the book value of the stock (as of the time of said notice) as determined according to accepted accounting practices, and shall be binding upon the parties.

He argued that Wallace Electric had a duty to make an offer and purchase his stock after his employment ended, a duty that the company did not fulfill. Moreover, Doss contended that the Bylaws required that the price of the stock be determined at the time the company offered to purchase his stock. Therefore, Doss contended that the value of his stock should be determined based on the date the company offered to purchase it. He maintained that because Wallace Electric had never offered him the "book value" of his stock, it had not satisfied its duties under the Bylaws — and he, therefore, was not obligated to sell.

3

Accordingly, in his view, the buyout should be calculated based on the stock's "book value" at the time the litigation began.

Doss admitted, however, that in 1988 the parties had entered into a Buy-Sell Agreement that also addressed the disposition of Wallace Electric stock. The Buy-Sell Agreement provided for the sale of any shareholder's stock upon death, total disability, or termination of employment. The Buy-Sell Agreement also set out a method for determining the current value of the stock in the event of a disagreement between the parties at the time of sale. Doss, however, contended that the Buy-Sell Agreement does not apply to the sale of his stock because it expired on June 30, 2008, before his brothers made any effort to purchase his stock.

Appellees, on the other hand, argued that Doss was not entitled to demand a buyout and had anticipatorily breached his duties under the Buy-Sell Agreement by retaining his stock after his employment with Wallace Electric ended in 1994. Gary offered to purchase Doss's stock in 2003, Appellees claim, but Doss continually refused to sell. Appellees maintain that the Buy-Sell Agreement affirmatively required Doss to sell his stock when his employment

4

with Wallace Electric ended. Appellees eventually amended their filings to explicitly request that the court order Doss to resell his shares at their 1994 value, in accordance with what they saw as the terms of the Buy-Sell Agreement.

With respect to the Bylaws, Appellees argued that they constituted a shareholder agreement and had expired pursuant to OCGA § 14-2-732 (b) (3), a statute that sets out requirements and limits for shareholder agreements and includes a 20-year sunset provision for such agreements.[2] Alternatively, the brothers claimed that the Bylaws had been superseded by the later-enacted Buy-Sell Agreement. The brothers also maintained that because none of the parties owned stock when the Bylaws were enacted in 1959, the Bylaws did not constitute an executory contract between the parties. Instead, they argued, the

---

[2] OCGA § 14-2-732 provides in relevant part:

. . .

(b) An agreement authorized by this Code section shall be:

. . .

(3) Valid for no more than 20 years. Failure to state a period of duration or stating a period of duration in excess of 20 years shall not invalidate the agreement, but in either case the period of duration shall be 20 years. Any such agreement may be renewed for a period not in excess of 20 years from the date of renewal by agreement of all the shareholders at the date of renewal.

5

parties were bound by the terms of the Buy-Sell Agreement, which was in effect and signed by the parties in 1988. Specifically, Appellees cited the following provisions of the Buy-Sell Agreement:

> Upon the . . . termination of employment of a Shareholder, such Shareholder . . . shall sell, and the Corporation shall buy, all, but not less than all, of the stock owned by such Shareholder for a purchase price equal to the current value.
>
> . . .
>
> In the event of termination of employment of a Shareholder, the Corporation shall purchase all of the stock owned by such Shareholder within sixty (60) days after the date of termination of employment.

Appellees maintained that the Agreement defined "current value" as $1,806 per share. Doss countered that the Agreement expired in 2008 and that its expiration resulted in a reversion to the Bylaws. He maintained that the Bylaws had not expired and were not subject to any subsequent laws restricting shareholder agreements to a 20-year span.

With the dispute between the parties centering upon the potential application and interpretation of these two documents, the trial court conducted a bench trial in equity.[3] At the conclusion of that bench trial, the court issued

---

[3] The trial court conducted a bench trial in equity and ordered the sale of Doss's stock at its 1994 value as an equitable remedy. An appeal presenting an issue concerning the "legality or propriety of equitable relief sought in the superior

6

an oral ruling. The trial court determined that all of the brothers understood that if you were not "working for the company, you should not take from the company" and that Doss had not "contributed in any meaningful way to the growth and development of the company since 1994." The court also concluded that in 1994, Doss's portion of stock was valued at $54,200, and that in 2015 Doss's stock was valued at over two million dollars. Based on those determinations, the trial court found that it was "reasonable to me that he should receive what he would have received at that time had he done what he was supposed to do, which was to return the stock to the company." The trial court awarded Doss $54,200 for his shares of Wallace Electric stock. But that award was not based on evaluation of the Buy-Sell Agreement or the Bylaws. Instead, the trial court announced that it would not decide the legal issues in the case:

court," when that equitable relief is not "ancillary to underlying issues of law," and in which a notice of appeal was filed before January 1, 2017, falls within this Court's former appellate jurisdiction in equity cases. *Williford v. Brown*, 299 Ga. 15, 15 (2) (785 SE2d 864) (2016); Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (2). In cases in which a notice of appeal is filed on or after January 1, 2017, the Court of Appeals will have jurisdiction of "all equity cases, except those cases concerning proceedings in which a sentence of death was imposed or could be imposed and those cases concerning the execution of a sentence of death." (Citation and punctuation omitted.) *Williford*, 299 Ga. at 16 n. 1.

I think that the issue of executory contracts and the issues of which of the governing documents would apply and when is to be left for the Court of Appeals. But I think it's very clear that neither of the parties did what they were supposed to do in connection with these governing documents.

In response to a request from Doss that the trial court enter findings of fact and conclusions of law, the court averred that the oral ruling contained its findings of fact and conclusions of law, and issued an order to the same effect. This appeal followed.

## II.

Although the trial court's written order fails to disclaim any responsibility for deciding the legal issues in this case, it also fails to actually do so. Much like its ruling from the bench, the written order does not make any findings of fact or conclusions of law regarding which document, if any, ultimately controlled the parties' dispute. While the written order determined that an "employee's share of stock in Wallace Electric ought to be returned to the company when the employee's term of employment is over," the trial court failed to include any written findings of fact or conclusions of law that Doss had a duty to sell his stock to Wallace Electric in 1994, or at any other point.

8

Additionally, the trial court failed to conclude whether either of the documents at issue were executory. Although we also avoid such a finding as a court of review, the trial court's original order seems to recognize that the outcome may depend on whether the governing documents gave the parties a *right* to buy or sell or a *duty* to buy or sell. Absent a determination of which document applied, if any, and what the terms of that document demanded of the parties, this Court cannot provide meaningful appellate review.

We do note that in its written order the trial court relied on the equitable maxim, codified at OCGA § 23-1-8, that equity considers that done which ought to be done and directs its relief accordingly. That maxim cannot be fulfilled where that which should have been done still remains to be determined. See *Burks v. Colonial Life & Acc. Ins. Co.*, 98 FSupp. 140, 144-145 (M.D. Ga. 1951), aff'd, 192 F2d 643 (5th Cir. 1951) ("To consider as done that which ought to have been done, the [c]ourt must determine what ought to have been done."). Moreover, "the first maxim of equity is that equity follows the law." *Dolinger v. Driver*, 269 Ga. 141, 143 (4) (498 SE2d 252) (1998). As this Court stated in *Dolinger*:

> [A] court of equity has no more right than a court of law to act on its own notion of what is right in a particular case. "Where rights are defined and established by existing legal principles, they may not be changed or unsettled in equity." [Cit.] Although equity does seek to do complete justice, it must do so within the parameters of the law.

Id. Equity does not permit a court to substitute its own notion of what is right in a particular case for a determination of what the law demands.

In this situation, Georgia law requires findings of fact and conclusions of law: A trial court presiding over a bench trial "shall upon request of any party made prior to such ruling, find the facts specially and shall state separately its conclusions of law." OCGA § 9-11-52 (a). One reason for that requirement is that it serves as an aid to the appellate court on review. *Gen. Teamsters Local Union No. 528 v. Allied Foods, Inc.*, 228 Ga. 479, 480 (1) (186 SE2d 527) (1971). Indeed, "a dry recitation that certain legal requirements have been met is insufficient to satisfy the requirements of the law. The trial judge is to ascertain the facts and to state *not only the end result of that inquiry but the process by which it was reached.*" *Beasley v. Jones*, 149 Ga. App. 317, 318 (1) (254 SE2d 472) (1979) (emphasis supplied). Here, the trial court announced an end result, but failed to mark the path that led to that result.

10

Simply put, it is not enough for a trial court to determine the end result based on its own notion of what is reasonable, leaving factual and legal decisions to the appellate courts in the first instance. In the present case, it is not possible from the state of the record and the trial court's order to determine what evidence or agreement the trial court relied upon in reaching its decision. As a result, meaningful appellate review is not possible. See, e.g., *SN Intl., Inc. v. Smart Properties, Inc.*, 311 Ga. App. 434, 437 (715 SE2d 826) (2011) (vacating and remanding where the trial court failed to make specific findings of fact and conclusions of law to explain its judgment when such an omission made meaningful appellate review virtually impossible).[4]

Accordingly, we vacate and remand with directions for the trial court to find the facts and state its conclusions of law, including whether the Bylaws,

[4] We echo the caution previously issued by our Court of Appeals on this issue:

> We caution, however, that our decision is not to be read as a general rule allowing a party to dispense with the requirement that it formally request findings and conclusions pursuant to OCGA § 9-11-52 (a) or holding that a party will always be rescued from its failure to make such a request on the record.

*Gold Kist, Inc. v. Wilson*, 220 Ga. App. 426, 428 (1) (469 SE2d 504) (1996). Rather, because of the complexity of the facts and issues in this case and because the record clearly reflects that Doss requested findings of fact prior to the trial court's judgment, we remand for issuance of findings of fact and conclusions of law by the trial court.

Buy-Sell Agreement, or any other document governs the parties' dispute.  We do not reach the merits of Doss's enumerations of error.

Judgment vacated and case remanded with direction.  All the Justices concur.

Decided May 15, 2017.

Equity. Henry Superior Court. Before Judge Amero.

James L. Ford, Sr., for appellant.

Smith, Welch, Webb & White, John P. Webb, David M. Waldroup, for appellees.