**SECOND DIVISION**
**MILLER, P. J.,**
**ANDREWS, J., and RICKMAN, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**April 24, 2018**

# In the Court of Appeals of Georgia

A18A0778. WALLACE v. WALLACE et al.

MILLER, Presiding Judge.

This dispute arises from the forced sale of one brother's stock in a family-owned business, Wallace Electric Company. Dorsey "Doss" Wallace, and his brothers, Phillip and Gary, all worked for Wallace Electric and owned stock in the company. After Doss stopped working for Wallace Electric in 1994, he did not sell – and the company did not even attempt to buy – his stock as was required by the company Bylaws and the shareholders' Buy-Sell Agreement ("the Agreement"). When Phillip asked Doss about returning the shares in 2003, Doss unequivocally refused. Several years later, Doss filed a complaint alleging that Phillip and Gary breached their fiduciary duty towards him as a shareholder. During the ensuing litigation, both parties sought specific performance of either the Bylaws or the

Agreement. Following a bench trial, the trial court found that Doss breached the Agreement when he did not return the stock in 1994, and it valued Doss's shares as they would have been valued in 1994, with a reduction for the minority interest Doss held. Doss now appeals. After a thorough review of the record and the applicable law, we conclude that the trial court erred in determining that Doss was required to sell his shares at the 1994 value and in applying a minority interest discount to the value of the stock. Instead, the trial court should have valued Doss's shares in 2003 when he breached the Agreement by refusing to sell his shares. Moreover, because we conclude that Doss continued to hold his shares until he breached the Agreement in 2003, the trial court erred in finding that Doss's claims for breach of fiduciary duty and tortious interference were moot. Accordingly, we vacate the trial court's order, and remand the case for further proceedings.

"Appeals from bench trials, where the trial judge sits as the trier of fact and has the opportunity to assess the credibility of the witnesses, are reviewed under the clearly erroneous standard. We will not disturb a trial court's findings if there is any evidence to support them." (Citations and footnotes omitted.) *Jenkins v. Sallie Mae, Inc.*, 286 Ga. App. 502 (649 SE2d 802) (2007). Questions of law are reviewed de novo. *Lewis v. McNeely*, 336 Ga. App. 696 (783 SE2d 172) (2016).

2

The facts of this case are undisputed. Wallace Electric is a family-owned company that was incorporated in 1959 by the parties' father. The father was head of Wallace Electric and controlled the business until his death in 2000. After the father died, Gary, as president, and Phillip, as vice president, controlled Wallace Electric, increasing the company's profitability substantially.

The stated purpose of the company is to make a profit. Additionally, because Wallace Electric was designed to be a family-owned business, only current employees of the company could retain stock. Pursuant to Wallace Electric's Bylaws, enacted in 1959, the retention and sale of stock were controlled as follows:

> [I]f the employment of any stockholder or officer is terminated, for any reason, the *corporation shall have the right and duty to purchase* all the stock of said employee or officer and the former officer or employee shall be obligated to sell his stock pursuant to these by-laws.

> The purchase price, in any event, shall be the *book value* of the stock (as of the time of said notice) as determined according to accepted accounting practices, and shall be binding upon the parties.

(Emphasis supplied.) ("Article V" of the Bylaws).

3

In 1988, Wallace Electric issued stock to all three brothers; Gary and Phillip received 30 shares (25 percent) each and Doss received 20 shares (16.67 percent).[1] Additionally, when Doss, Gary, and Phillip obtained their shares in 1988, the parties entered into the Agreement, which provided,

> Upon the . . . termination of employment of a Shareholder, such Shareholder . . . shall sell, and the Corporation shall buy, all, but not less than all, of the stock owned by such Shareholder for a purchase price equal to the *current value*.[2]
>
> . . .
>
> In the event of termination of employment of a Shareholder, the Corporation shall purchase all of the stock owned by such Shareholder *within sixty (60) days* after the date of termination of employment.

(Emphasis supplied.) Finally, the Agreement specified that damages for breach of the Agreement were "immeasurable," and thus, the Agreement contemplated specific performance or other equitable remedies. In signing the Agreement, the parties

---

[1] The father also received 40 shares of stock. When he died in 2000, he bequeathed his stock to his wife, but she later sold the stock back to Wallace Electric.

[2] The Agreement defined "current value" as $1,806 per share. Per the terms of the Agreement, the "current value" was subject to annual review. It is undisputed that the value has never been amended.

expressly waived any defense that they had an adequate remedy at law. By its own terms, the Agreement expired in 2008.[3]

All three brothers initially worked for Wallace Electric, but Doss left his employment in 1994. At the time Doss left Wallace Electric, he owned one-sixth of the issued stock. He did not offer to sell his stock to the company as required by the Bylaws and Agreement, however, because he planned to return to the company "at some point." Nor did Wallace Electric attempt to buy Doss's stock when his employment ceased.

In 2003, during a review of the company's status, Gary and Phillip realized that Wallace Electric had not repurchased Doss's stock after Doss left the company. Phillip contacted Doss to inquire about Wallace Electric repurchasing Doss's stock, but they never discussed a purchase price because Doss adamantly refused to sell it. Phillip allegedly spoke to Doss again about selling the stock in 2006 or 2007, to no avail.

In August 2011, Doss filed a complaint for an accounting and damages against Gary and Phillip, alleging breach of fiduciary duty and tortious deprivation of his

---

[3] This lawsuit, which was filed within three years of the expiration of the Agreement, was timely. See OCGA § 9-3-24.

5

interest in Wallace Electric, and seeking punitive damages and attorney fees. He subsequently moved to add Wallace Electric as a defendant, and filed an amended complaint to add claims that are not relevant to the instant appeal.

Gary, Phillip, and Wallace Electric (collectively "the defendants") filed an answer, a counterclaim seeking damages and fees for abusive litigation, and an amended counterclaim. In the amended counterclaim, the defendants argued that, as a matter of equity, Doss should be ordered to sell his stock back to Wallace Electric at the 1994 value. Doss moved to dismiss the counterclaim as untimely, but the trial court denied the motion.

In 2015, Doss notified Wallace Electric that he wished to sell his shares back to the company at their present value. He also filed a motion for specific performance, demanding that Wallace Electric repurchase the 25 percent interest in stock that he now owned as a result of his father's shares being reabsorbed into the company, at Wallace Electric's 2015 book value. In response, the defendants tendered Doss a check in the amount of $54,200, which represented the 1994 book value of Doss's 16.67 percent interest in the company at that time. Doss rejected this offer. At the time, the book value of Wallace Electric was just over $8 million.

At a bench trial, the parties agreed that there should be a buyout of Doss's shares.[4] The parties disagreed, however, about which document controlled the buyout and the appropriate year for valuing Doss's stock. Doss contended that Article V of the Bylaws controlled the manner and value of the stock purchase, and that his offer to sell his stock in 2015 required Wallace Electric to purchase the stock at the 2015 value. The defendants argued that the Agreement controlled because the Bylaws expired prior to the effective date of the Agreement, the Agreement superseded the Bylaws, and therefore, Doss was obligated to sell his stock at the 1994 value.

The trial court found in favor of Phillip and Gary, and ordered Doss to sell his shares at the 1994 value. In doing so, however, the trial court initially did not expressly rule on any of the parties' specific legal arguments. Doss appealed to the Supreme Court of Georgia,[5] which vacated the trial court's order and remanded for the trial court to make factual findings and state its legal conclusions. See *Wallace v. Wallace*, 301 Ga. 195 (800 SE2d 303) (2017).

---

[4] Thus, the parties agreed that the bench trial would address only the buyout issue and not matters related to Doss's claims for breach of fiduciary duty, tortious interference, and punitive damages and attorney fees.

[5] At the time of Doss's first appeal, equity jurisdiction lay in the Supreme Court of Georgia. See *Wallace*, supra, 301 Ga. at 197 (I), n. 3. We now have jurisdiction. See OCGA § 15-3-3.1 (a) (2) (2017).

7

On remand, the trial court found that (1) the Agreement governed the dispute because it superseded and replaced Article V of the Bylaws; (2) the Agreement was not executory in nature; (3) Doss breached the Agreement in 1994 when he failed to sell his stock upon leaving Wallace Electric; (4) the defendants' counterclaims were timely because Doss's breach continued through 2008, the complaint was filed within the statute of limitations, and the counterclaims related back to the timely-filed complaint; (5) an equitable remedy was appropriate to give effect to the parties' intent and required the conclusion that Doss be held to the terms of the Agreement as if he had sold his shares in 1994 when he left the company; and (6) in light of this conclusion, Doss's remaining claims were moot. This appeal followed.

1. In several related enumerations of error, Doss argues that the trial court erred in concluding that (a) the counterclaim was timely; (b) the Agreement controlled; and (c) he was in breach of the Agreement. We disagree.

To begin, we agree with the trial court that the equitable remedy of specific performance is appropriate here. "Equity jurisdiction is established and allowed for the protection and relief of parties where, from any peculiar circumstances, the operation of the general rules of law would be deficient in protecting from anticipated

8

wrong or relieving for injuries done." OCGA § 23-1-3. "Equity considers that done which ought to be done and directs its relief accordingly." OCGA § 23-1-8.

"Specific performance is an equitable remedy available when the damages recoverable at law would not be an adequate compensation for nonperformance." (Citations, punctuation, and footnotes omitted.) *Simpson v. Pendergast*, 290 Ga. App. 293, 297 (2) (a) (659 SE2d 716) (2008). Here, there is no adequate remedy at law given the nature of the stock in this small, family-owned business, and the explicit acknowledgment in the Agreement that specific performance was the appropriate remedy in the event of a breach. Moreover, given the failure of all parties to strictly follow the terms of either the Agreement or Bylaws, an equitable remedy "considers that done which ought to be done." See OCGA § 23-1-8. With this in mind, we turn to Doss's substantive claims on appeal.

(a) *Whether the trial court properly allowed the defendants' counterclaim*

Doss argues that the trial court abused its discretion when it permitted the defendants to file an amended counterclaim seeking specific performance of the Agreement. The trial court did not abuse its discretion.

Here, Doss's complaint alleged breach of fiduciary duty and tortious interference against Gary and Phillip. Doss did not originally name Wallace Electric

9

as a defendant, but Wallace Electric was the proper party to demand that Doss sell or Wallace Electric repurchase Doss's shares. The amended counterclaim alleged that Doss wrongfully retained his shares in Wallace Electric despite repeated demands to sell his shares, and that equity required he be ordered to sell his shares at the 1994 value. OCGA § 9-11-13 (f) provides, "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment." Thus, it was only after Doss added Wallace Electric that the counterclaim for specific performance became relevant and applicable in the present suit.

Moreover, given that Doss also seeks specific performance of Wallace Electric's obligation to repurchase his shares, there is no prejudice from allowing the counterclaim. *Martin & Jones Produce, Inc. v. Lundy*, 197 Ga. App. 38, 39 (2) (397 SE2d 461) (1990) (trial court should liberally allow omitted counterclaim where no prejudice results). We thus conclude that the trial court properly exercised its discretion to permit the amended counterclaim. *EarthLink, Inc. v. Eaves*, 293 Ga. App. 75, 78 (4) (666 SE2d 420) (2008) (applying abuse of discretion standard of review to amendment to add counterclaim).

(b) *Whether the Agreement was the controlling document*

10

Doss next argues that the trial court erred by concluding that the terms of the Agreement controlled the sale of the shares. We find no error in the trial court's determination that the Agreement governed the sale.[6]

> Shareholder agreements are construed according to the principles of the law of contracts. The cardinal rule of contract construction is to ascertain the intent of the parties at the time they entered the agreement. Construction of a contract by the court involves three steps. First, if no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. Secondly, if ambiguity does appear, the existence or nonexistence of an ambiguity is a question of law for the court. Finally, a question arises for the factfinder only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction.

(Citations and footnotes omitted.) *Foster v. Ohlwiler*, 266 Ga. App. 371, 375-376 (1) (b) (597 SE2d 481) (2004). Here, it is clear that the parties intended that a shareholder return his shares to the company when that shareholder was no longer an employee.

---

[6] We note that the trial court based its ruling that the Agreement controlled on its erroneous conclusion that the Bylaws had expired before Doss left the company. Contrary to the trial court's conclusion, the 20-year validity provision in OCGA § 14-2-732 does not apply to shareholder agreements in effect prior to the enactment of this statute. See *Ansley v. Ansley*, 307 Ga. App. 388, 390 (1) (705 SE2d 289) (2010).

11

To effectuate this intent, however, the parties employed two different contracts with different terms, and we must determine which of these documents controls: the Bylaws or the Agreement.

"An existing contract is superseded and discharged whenever the parties subsequently enter upon a valid and inconsistent agreement completely covering the subject-matter embraced by the original contract." (Citation and punctuation omitted.) *Triple Net Properties, LLC v. Burruss Dev. & Constr., Inc.*, 293 Ga. App. 323, 327 (2) (a) (667 SE2d 127) (2008). Here, the Agreement contradicted Article V of the Bylaws in the manner of calculating the share valuation at the time of repurchase and by setting a specific time frame in which the repurchase was to occur. All parties signed the Agreement, and there is no dispute as to its validity. Thus, because the valuation as set forth in the Agreement is inconsistent with that set forth in Article V of the Bylaws, the Agreement superseded this portion of the Bylaws.

(b) *Whether Doss breached the Agreement*

Doss next argues that the trial court erred in finding that he breached the Agreement in 1994 by failing to sell his stock back to the company upon his termination of employment. We conclude that the trial court properly determined that

12

Doss breached the agreement, but that it erred in its analysis of when that breach occurred.

We begin by noting that, contrary to the trial court's finding, the Agreement is an executory contract. See OCGA § 13-1-2 (b) ("An executory contract is one in which something remains to be done by one or more parties."); *Drennon Food Products Co. v. Drennon*, 101 Ga. App. 606, 607 (1) (114 SE2d 799) (1960). The Agreement placed an affirmative duty on each party: "the Shareholder . . . shall sell, and the Corporation shall buy" the former employee's stock. The contract required that the shares be repurchased within 60 days of Doss's departure from Wallace Electric.

Importantly, however, *no one* adhered to the Agreement's contractual obligation to buy and sell the stock within 60 days of Doss's termination of employment in 1994. Before we can address which of the parties breached, we must consider what effect that failure has on the parties' obligations.

> A waiver may be express, or may be inferred from actions, conduct, or a course of dealing. Waiver of a contract right may result from a party's conduct showing his election between two inconsistent rights. Acting on the theory that the contract is still in force, as by continuing performance, demanding or urging performance, or permitting the other party to perform and accepting or retaining benefits under the contract,

13

may constitute waiver of a breach. However, all the attendant facts, taken together, must amount to an intentional relinquishment of a known right, in order that a waiver may exist.

(Citations omitted.) *Forsyth County v. Waterscape Svcs., LLC*, 303 Ga. App. 623, 630 (2) (a) (694 SE2d 102) (2010). "[W]here, as here, the facts and circumstances essential to the waiver issue are clearly established, waiver becomes a question of law." (Citation and punctuation omitted.) Id.

We may infer waiver where a party's acts or omissions are "so manifestly consistent with an intent to relinquish a then-known particular right or benefit that no other reasonable explanation of his conduct is possible." (Citation and footnote omitted.) *Eckerd Corp. v. Alterman Props., Ltd.*, 264 Ga. App. 72, 75 (1) (589 SE2d 660) (2003). Based on the evidence in the record, we conclude that there is no other reasonable explanation for the parties' inaction but to infer that the parties' mutual failure to adhere to the 60-day repurchase and sale term in the Agreement was a waiver of the breach and a decision to treat the remaining contract as in force. See *Ansley v. Ansley*, 307 Ga. App. 388, 393 (2) (705 SE2d 289) (2010); see also *Eckerd Corp*, supra, 264 Ga. App. at 75 (1); *Waterscape Svcs.*, supra, 303 Ga. App. at 630 (2) (a).

14

Having concluded that the 60-day term is no longer part of the contract, we turn to whether Doss subsequently breached the Agreement. Based on the undisputed facts, we conclude that Doss breached the Agreement in 2003 when he refused Phillip's request to repurchase the stock.

As noted, the Agreement was an executory contract. As such, an attempt by either party to perform under the contract triggered the other party's duty to perform. *Drennon Food Products Co.*, supra, 101 Ga. App. at 607 (1). The first time there was any discussion regarding the sale of shares was in 2003, when Phillip approached Doss about selling his stock.

> A party seeking specific performance must be ready, willing, and able to perform all provisions of the contract, including any payment. But it is a well-established rule that tender before suit is filed may be and is waived where the party entitled to payment, by conduct or declaration, proclaims that, if a tender should be made, acceptance would be refused.

(Citations, punctuation, and footnotes omitted.) *Simpson*, supra, 290 Ga. App. at 297 (2) (a). Because the Agreement is an executory contract, Phillip's request on behalf of Wallace Electric in 2003 triggered Doss's obligation to sell, and Doss's refusal to comply at that time constituted an anticipatory breach.

15

Doss claims that the defendants were not ready, willing, and able to perform in 2003 because they did not tender a purchase price. This argument is without merit. Once Doss unequivocally indicated that he would never sell his stock, the defendants' obligation to tender payment in 2003 was waived. *Simpson*, supra, 290 Ga. App. at 297 (2) (a).

Thus, the relevant year for purposes of the breach is 2003, when Wallace Electric exercised its obligation to repurchase the stock, and Doss refused to sell.[7] See, e.g., *Capps v. Edwards*, 130 Ga. 146 (2) (60 SE 455) (1908) (in executory contract for sale of stocks, once tender is alleged, refusal to adhere to contractual

---

[7] The defendants also argue that Doss is not entitled to sell his stock at the 2015 value because he has unclean hands. "The doctrine of unclean hands is a well-established principle. 'He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action.' OCGA § 23-1-10. The unclean-hands maxim which bars a complainant in equity from obtaining relief has reference to an inequity which infects the cause of action so that to entertain it would be violative of conscience." (Citation and punctuation omitted.) *Park v. Fortune Partner, Inc.*, 279 Ga. App. 268, 273 (6) (630 SE2d 871) (2006). Here, none of the parties have clean hands: No party attempted to adhere to the terms of the Agreement in 1994; Gary and Phillip then made no attempt to obtain the shares when they gained control of the company in 2000; and, once the issue was raised in 2003, Doss refused to sell his shares. Given the conduct of all the parties here, we find that the doctrine of unclean hands does not bar the equitable sale of the stock.

obligation allows suit for damages to recover the value of the stock according to the contract terms).

2. Doss next contends that the trial court improperly determined the value of his stock by using the 1994 value and discounting his percentage for minority interest.[8] We agree.

(a) *Relevant time period for valuation of stock*

Given our conclusion in Division 1 that Doss breached the Agreement in 2003, the trial court erred in considering Wallace Electric's value in 1994. The relevant year for valuation purposes is 2003.

According to the expert testimony at trial, the "fair market value" of Wallace Electric's stock in 2003 was $1,834,305. At that time, Doss owned 16.67 percent of the company, which placed the "fair market value" of Doss's stock at $305,700. Because Doss's 16.67 percent share of the company was not a controlling interest, the expert applied a minority interest discount to 15 percent, which he testified made Doss's shares worth $259,900.

---

[8] The defendants' expert testified that he used two approaches to calculate the value and that this was consistent with the Professional Standards and Code of Professional Conduct of the American Institute of Certified Public Accountants. Doss does not challenge this method on appeal.

We note that the Agreement required that the purchase price be the "current value" of the stock, which the Agreement quantified as $1,806 per share. The Agreement, however, also called for this figure to be re-evaluated annually – a task that undisputably was never done. There is nothing in the Agreement that relates valuation to "fair market value." Therefore, on remand, the trial court must determine, in the first instance, whether the parties waived this valuation provision establishing the current value. If the trial court determines that this provision establishing the "current value" has been waived, it must then determine how to establish the "current value."

(b) *Application of a minority interest deduction*

The expert explained that the minority interest discount was a factor in determining the fair market value because the value is "affected by the rights and privileges that interest has, and a minority interest cannot . . . dictate the course of the company" thus making the minority interest less valuable. We conclude that the trial court erred when it discounted the value of the stock based on a minority interest.

In discussing the minority interest discount in dissenting shareholder lawsuits, this Court explained:

18

[M]inority and marketability discounts should not be applied when determining the fair value of dissenting shareholders' stock. [Other] courts have reasoned that using discounts injects speculation into the appraisal process, fails to give minority shareholders the full proportionate value of their stock, encourages corporations to squeeze out minority shareholders, and penalizes the minority for taking advantage of the protection afforded by dissenters' rights statutes.

Reflecting this majority view, the Model Act definition of fair value . . . now expressly provides that fair value should be determined without discounting for lack of marketability or minority status. The Official Comment to the new Model Act explains . . . that valuation discounts for lack of marketability or minority status are inappropriate in most appraisal actions, both because most transactions that trigger appraisal rights affect the corporation as a whole and because such discounts give the majority the opportunity to take advantage of minority shareholders who have been forced against their will to accept the appraisal-triggering transaction . . . . [A]ppraisal should generally award a shareholder his or her proportional interest in the corporation after valuing the corporation as a whole, rather than the value of the shareholder's shares when valued alone.

(Citations and footnotes omitted.) *Blitch v. Peoples Bank*, 246 Ga. App. 453, 456-457 (1) (540 SE2d 667) (2000) (discussing minority interest discount in dissenter's rights suit). Although the instant case does not arise in the context of a dissenter's rights

19

suit, we find the logic of our prior holding persuasive. Where, as here, the stock involves a small, family-owned business, with little marketability, the value of the shares necessarily accounts for the minority interest without further reduction. Thus, as *Blitch* makes clear, the trial court erred in applying a minority interest discount.

The defendants' reliance on *Atlantic States Constr., Inc. v. Beavers*, 169 Ga. App. 584, 588-589 (6) (d) (314 SE2d 245) (1984), to support the trial court's use of the discount is unpersuasive, as that case is physical precedent only. Moreover, *Beavers* does not hold that a stockholder's minority interest must be considered; rather, the opinion warns the trial court to apply the minority interest factor with caution and explains that the valuation can account for the stock having a lesser value because of a lack of marketability. Id. at 588-589 (6) (d). Nothing in the record convinces us that the minority interest reduction should apply because the value already took into account the lack of marketability.

In summary, on remand, the trial court should determine the value of Doss's 16.67 percent share of the stock as of 2003 without the minority interest discount and taking into account that the Agreement provided that the purchase price of the stock would be "current value."

3. Doss next claims that the trial court's award constitutes an unconstitutional taking of his property. Although Doss raised this issue before the trial court, the trial court did not rule on it. Thus, it is not properly before this Court. *City of Brookhaven v. City of Chamblee*, 329 Ga. App. 346, 353 (4) (765 SE2d 33) (2014) ("a constitutional issue is waived for appellate review where the trial court fails to rule upon it."). We recognize that more recent Supreme Court of Georgia cases have suggested that remand is necessary for the trial court to rule on the constitutional issue, however, we find remand is unnecessary in this case because the takings argument is without merit. See id. A trial court's order issuing an award in a case pending before it is simply not an unconstitutional *governmental* taking.

4. Finally, Doss argues that the trial court deprived him of his right to a jury trial on his claims for breach of fiduciary duty, tortious deprivation, punitive damages, and attorney fees.

In light of our conclusion in Division 1 that the breach occurred in 2003, the trial court's conclusion that the claims were moot is error. From 1994 through 2003, Doss retained a shareholder interest in Wallace Electric. Thus, his claims for breach

21

of fiduciary duty during this time frame survive, and the trial court must evaluate them on remand.[9]

We are mindful that this litigation has been lengthy, and that our Supreme Court has already remanded this case once for further factual findings. Nevertheless, we must remand again. We urge the trial court to bring this lengthy dispute to an expeditious conclusion consistent with the directions in this opinion. Specifically, on remand, the trial court is instructed to determine the "current" value of the stock as of 2003, without applying any minority interest discount. Moreover, the trial court should allow Doss's claims for breach of fiduciary duty, tortious deprivation of his interest in the company, and for attorney fees and punitive damages from 1994 through 2003 to proceed.

*Judgment vacated and case remanded. Andrews and Rickman, JJ., concur.*

---

[9] We express no opinion on the timeliness or merit of those allegations.